28132. BANCROFT *v.* CONYERS REALTY COMPANY.

DECIDED JULY 1, 1940.    REHEARING DENIED JULY 30, 1940.

*Carl T. Hudgens,* for plaintiff in error.

*William H. Mewbourne, Scott Candler,* contra.

GARDNER, J.  The Conyers Realty Company, a partnership, brought an action on contract, to recover $1000, against George R. Bancroft and George R. Bancroft doing business under the name

of the Bancroft Lumber Company, and made substantially the following allegations: The plaintiff, acting through its authorized agents, procured a listing, unexclusive, from the authorized agent of the heirs of an estate owning certain timbered lands, to sell the land and timber on the condition that the sale price would be $14,-000 net to the heirs and without any obligation upon them as sellers to pay any commission whatsoever on the sale. The plaintiff, acting through its agents, contacted the defendants, hereinafter referred to as Bancroft, and interested them in a contemplated purchase of the property in question, and, subsequently to April, 1935, took Bancroft to inspect the property. Before going on the property and before showing it to Bancroft, and before or at the time of introducing Bancroft to the authorized agent of the estate, the plaintiff, by its agents, and Bancroft agreed that Bancroft would pay the plaintiff $1000 commission for "showing him [Bancroft] said timber lands and introducing him to the representatives of the owners, and assisting him in the purchase of said lands at the best price" under $14,000 at which the defendants would be willing to buy, provided a final inspection would justify the further interest of the defendants in the purchase of the property. The plaintiff thereupon, through its agents, showed Bancroft over a large portion of the land and timber, when the latter agreed to return at a *later* date to complete the inspection, and then, if interested in buying, have the plaintiff assist him in procuring a purchase at the lowest price possible under the $14,000 acceptable to Bancroft for consummation of the purchase. Thereafter, at intervals during several months preceding April, 1936, the plaintiff sought to have Bancroft complete the inspection and thereby permit the plaintiff to further the negotiations with the estate's agent, looking to a reduction of the sale price to a sum acceptable to Bancroft. While Bancroft did not refuse this right of final inspection and that of continuing negotiations with the estate's agent, he always insisted on putting the plaintiff off, and on delaying his own return for the supposedly necessary final inspection, on which the further negotiations by the plaintiff with the estate's agent *were dependent*. In April, 1936, Bancroft negotiated directly with the estate's agent, independently of the knowledge and assistance of the plaintiff, and purchased the property on terms satisfactory to himself. On learning of the transaction the plaintiff demanded payment of $1000

as its commission on the sale. The allegations disclosed no *express* time limitation in which the terms of the contract should be performed.

The defendants demurred generally and specially to the petition as originally drawn, and thereafter renewed the demurrers to the petition as amended. The demurrers were overruled, and the defendants excepted pendente lite. Save as to the question of venue of the defendant Bancroft, the defendants answerd with the denial of all averments of the petition as amended, and pleaded further that the plaintiff "should not proceed with said action, and are not entitled to recover, for the reason they are not registered in the office clerk superior court, Fulton County, Georgia, as required by law, that is the trade-name or partnership name of Conyers Realty Company is not registered in the office clerk superior court, Fulton County, Georgia, as required by law, Fulton being the county where plaintiff was doing business at the time of other things complained of."

The jury found for the plaintiff. Judgment was rendered, inclusive of the court costs. The defendants moved for a new trial. The court overruled the motion, and the defendants excepted. The case is before this court on exceptions assigning error upon the general grounds and several special grounds, one of the latter being on the failure of the plaintiff to have registered its trade-name as required by law. Error was assigned on the overruling of the general and special demurrers.

■ Where a contract fixes no express time within which its terms are to be performed, a reasonable time will be implied. *Bearden Mercantile Co.* v. *Madison Oil Co.,* 128 *Ga.* 695 (3) (58 S. E. 200). The rule applies with reference to any future act to be performed under the terms. *Bryant* v. *Atlantic Coast Line Railroad Co.,* 119 *Ga.* 607 (3) (46 S. E. 829). See *Garrett* v. *Wall,* 29 *Ga. App.* 642 (3) (116 S. E. 331); *Broyles* v. *Haas,* 48 *Ga. App.* 321 (172 S. E. 742), and cit.

■ In the instant case there was no obligation under the contract, fairly construed, for the plaintiff's agents to secure a price reduction until it became apparent that Bancroft was satisfied as to the values seen, sufficiently to authorize the plaintiff's agents to proceed with the next step, that of securing a price reduction satisfactory to Bancroft. The jury was authorized to find, under the

evidence, that the plaintiff's agents were led to believe by Bancroft that further inspection would be necessary before authorizing them to proceed farther, and that the plaintiff's agents thereafter strove to effect further inspections, which were blocked by Bancroft. We think the non-performance by the plaintiff to secure the price reductions was caused by the fault of Bancroft. The Code, § 20-1104, provides: "If the non-performance is caused by the act or fault of the opposite party, that excuses the other party from performance." See *Flake* v. *Bowman,* 28 *Ga. App.* 443 (7) (111 S. E. 747), and cit.

■ As to the general grounds, save as to the extent of the court costs, the verdict was not without evidence to support it, although the evidence was in serious conflict in several particulars. The jury was authorized to find that the evidence showed conclusively that the plaintiff, through its agents, had secured a non-exclusive listing of the property in question for sale at $14,000 net to the sellers, and without obligation on the sellers to pay any commission on the sale; that the plaintiff's agents interviewed Bancroft prospectively for the purchase of the property; that Bancroft met or accompanied the plaintiff's agent to inspect the property; that they together did make an inspecton of the property; that the plaintiff's agents introduced the estate's agent to Bancroft; that before the inspection above indicated, Bancroft, while he had known from general repute that the property was for sale, had not made any inspection except as he had viewed the property while passing along the public road, nor had he subsequently to the above inspection made any further and private inspections, save that any going on the property thereafter by Bancroft was only to look for his lost dog, except that Bancroft did make some further inspection when the lines of the property were being indicated preparatory to the purchase already in process of consummation; that at intervals thereafter the plaintiff's agents attempted to get Bancroft to go again with them to complete the inspection, and Bancroft as often avoided or postponed the going; that Bancroft was informed of the nature of the listing, and that the *sellers* would not pay sales commissions, and that the plaintiff's agents were ready to secure at the instance of Bancroft any price reductions possible, acceptable to Bancroft. The jury was further authorized to find from the conflicting evidence that the plaintiff's agents informed Bancroft that

he would have to pay the sale commission in the event of a purchase of the property; that Bancroft agreed to pay the fixed sum of $1000 if he bought the property; that they were to introduce Bancroft to the estate's authorized agent, were to show him the property, and that should he be interested in buying they were to secure the lowest price reduction possible which might be acceptable to Bancroft; that they performed their obligations under the contract, save that they were never permitted to give the final inspection and seek after a price reduction, except one instance of offering $11,000 on behalf of Bancroft, which he denied that he had authorized. The jury was authorized further to find that Bancroft saw sufficient values in the inspection the plaintiff's agents furnished him to interest him later to buy the property; that he purchased the property through the estate's agent to whom he had been introduced under the contract by the plaintiff's agents; and that in final purchase of the property Bancroft evaded the further efforts of the plaintiff's agents relatively thereto. The evidence also disclosed that the plaintiff had not at the time of filing suit registered its trade-name as required by law.

■ Under the contract and the evidence the plaintiff's agents (Reese and Reid) introduced Bancroft to the estate's agent (White) and showed him the timber and land, on which showing alone Bancroft was satisfied to *perfect* his purchase. We think it helpful here to revert to the record. We quote from the testimony of Bancroft: "The time I went up there with Mr. Reese and Mr. Reid, that was the only time I looked at the timber. That was the latter part of August [1935]. That was the first time I ever met Mr. White." Bancroft further testified that he knew generally that the property was for sale; had never seen it before, except along the public road passing through the property, and had never seen it afterward, except "I made several trips back there, but it wasn't about the timber. I looked for my dog." He further testified that at the time of closing the trade he did go back to the property where White, the estate's agent, explained the lines, when "he and I went over there and looked the thing over, what I hadn't looked at, and we looked around, and he explained the lines to me and different things about it that I wanted to know." The acts of the plaintiff's agents were the efficient cause of Bancroft several months later seeking the estate's agent and perfecting the purchase, not-

112

withstanding the fact of some further inspection by Bancroft at the time of *closing* the deal already initiated on the original inspection furnished by the plaintiff. The acts of the plaintiff being the efficient cause of the purchase, we think the plaintiff entitled to recover. In *Wilcox* v. *Wilcox,* 31 *Ga. App.* 486 (119 S. E. 445), it was held, with reference to property being placed in his hands for sale, that in order for the broker to have earned his commissions he must have sold the property or have "been the procuring cause of the sale." Also it was held: "In determining whether a broker has earned his commission for procuring a purchaser, it is not necessary that his services shall have been the sole cause, but it is enough if the efforts of the broker, acting on the purchaser, are the efficient cause of his offer." In the case at bar we think analogy of reasoning applies as well to the purchaser as to the owner. The jury was authorized to find that the efforts and acts of the plaintiff were the procuring or efficient cause of the purchase.

■ The evidence showed conclusively that at the time of filing suit the plaintiff had not registered its trade-name with the clerk of the superior court of the county of its residence, as required by the Code, §§ 106-301 et seq. Under § 106-303 (Ga. L. 1937, pp. 804, 805), the costs of court included within the judgment must be cast against the plaintiff. It matters not that the contract was in existence previously to the passage of the act of 1937. *Walker* v. *Abbot,* 57 *Ga. App.* 381 (195 S. E. 450). The court erred in casting the costs against the defendant.

Headnotes 6 and 7 need no elaboration.

*Judgment affirmed on condition. Broyles, C. J., and MacIntyre, J., concur.*