34126. MERCHANTS GROCERY COMPANY *v.* SHAWNEE MILLING COMPANY.

DECIDED SEPTEMBER 26, 1952.

850

*Will Ed Smith,* for plaintiff in error.
*Hal M. Smith,* contra.

GARDNER, P. J. This case is in this court upon exception by the plaintiff in attachment to the sustaining by the trial judge of a general demurrer to its declaration in attachment, as amended, and the consequent dismissal of the case.

It is urged that the plaintiff is not a proper party to bring this action to recover for an alleged breach of the contract for the sale of flour between the defendant company and J. A. Ross Company Inc. The contract sued on provides: "This contract constitutes the complete agreement between the parties hereto and cannot be changed in any manner except in writing by buyer and seller or their duly authorized officers." An action brought by the assignee of a written contract in its own name must affirmatively show that the transfer or assignment was in writing in order to withstand a proper demurrer. See *Alropa Corp.* v. *Richardson,* 58 *Ga. App.* 656, 657 (199 S. E. 666), and citations. It appeared by amendment that there was a written assignment of the contract by J. A. Ross Company Inc. to the plaintiff. This transfer is not assented to in writing by the defendant company. However, it is urged by the defendant company that, while there was a transfer of the interest of the buyer (J. A. Ross Company Inc.) by this writing the same constituted

a change in the contract, the substitution of a new buyer, and that, therefore, in order to bind the defendant company such assignment and transfer would have to be in writing by both the seller and the buyer through their authorized officers. However, as we view the matter, there is no merit in this contention. Regardless of whether or not there had to be a transfer in writing signed by the duly authorized officials of the defendant company and J. A. Ross Company Inc. in order to effect a valid assignment of this contract as to the defendant company, it appears from the declaration as amended that the defendant company recognized the plaintiff company as the assignee and the person to whom the flour was to be shipped under the contract and accordingly shipped flour to the plaintiff company after the date of the alleged assignment under the contract, dealing with it as it would have dealt with J. A. Ross Company Inc. and as it did deal prior to the date of the transfer. This being so, regardless of whether there had been a proper assignment of the contract to the plaintiff company, such as would legally bind the defendant company, and would entitle the plaintiff company to proceed with an action in its own name for an alleged breach of this contract, the defendant will not now be heard to complain of the legality of this assignment and to question the right of the plaintiff company to proceed thereunder against it. It dealt with the plaintiff company as having properly acquired this contract. It considered the plaintiff as the buyer named in the contract by shipping to it flour thereunder. The defendant is therefore now estopped from raising the question. It dealt with the plaintiff as if the transfer to it was sufficient. By dealing with the plaintiff as the proper person to ship the flour to under said contract, the defendant will not now be heard to say that the plaintiff was not the proper person because the transfer of the contract to the plaintiff had not been properly assented to by it in writing.

However, there is a much more serious question raised by the pleadings here. It does not appear that there has been such a breach of this contract as to entitle the plaintiff, under the situation as it existed at the time it sued out the attachment, to recover now for the amount of the flour which it claims it was entitled to receive at the original contract price of $6.92½ per

cwt. which was a balance of 1470 cwts. of flour. This is conceding that the construction placed by the plaintiff on the contract as calling for 2000 cwts. of flour in twenty-five pound packages, instead of as the defendant claims, which was that the contract called for 2000 twenty-five pound packages of flour, amounting to 500 cwts., is the correct construction to be placed on the contract. Under the view which we take of this case there had been no breach of the contract by the refusal of the defendant to deliver to the plaintiff sufficient cwts. of flour at the original contract price of $6.92½ per cwt. to amount to 2000 cwts. of flour, the amount the plaintiff contends that the contract sued upon provided for. This is the view taken by the trial judge in dismissing the plaintiff's case on general demurrer, as appears from an able and clear-cut opinion accompanying his judgment sustaining the defendant's general demurrers to the plaintiff's declaration as amended.

The defendant company did not actually refuse to ship to the plaintiff the amount of flour claimed by the plaintiff at $6.92½ per cwt. It appeared that while the defendant did write to the plaintiff under date of January 9, 1948, that "you will refer to the actual contract and you will notice it is a booking for 2000/25 pound bags, which makes a total of 500 cwts.," and that the shipments made in accordance with the contract to the plaintiff amounted to 500 cwts., the defendant in fact did not terminate the contract but actually informed the plaintiff that it had shipped to Eastman and stored there certain flour which the plaintiff could draw at the contract price, and that the plaintiff withdrew from this lot of flour 30 cwts. and paid therefor $6.92½ per cwt. It is alleged in the original declaration that around January 31, 1948, "the defendant shipped to your petitioner Okeene's Best Flour, as specified in the aforesaid contract, at a price in excess of the contract price. . . Thereupon on the 14th day of February, 1948, your petitioner gave the defendant by registered mail, written notice of its intention to cancel or terminate the contract. . . Whereupon one Cartwright, a duly authorized agent of the defendant, orally advised your petitioner, on the _____ day of February, 1948, that the contents of the car referred to above would be stored at Eastman, Georgia, by the defendant, and that your

petitioner could draw from storage flour as required by petitioner *at the aforesaid contract price*. [Italics ours.] Petitioner withdrew 30 cwts. of flour from storage under this procedure." While it is ·further set out that "notwithstanding the agreement that petitioner could withdraw flour from storage at the contract price as aforesaid, the defendant proceeded to attempt to sell and dispose of the flour to other parties, without petitioner's knowledge and consent," it does not appear that the defendant disposed of any of the same to other parties prior to the time the plaintiff, on March 16, 1948, sued out said attachment and had the same levied upon certain flour and grits of the defendant. This action is predicated upon the failure and refusal of the defendant to comply with the contract and deliver to the plaintiff 2000 cwts. of flour at \$6.92½ per cwt., there being undelivered under the contract at the time the action was brought 1470 cwts. of flour. It does not appear that the defendant failed to deliver the flour, but on the contrary it affirmatively appears that the defendant made this flour available to the plaintiff at the contract price and that the plaintiff took advantage thereof and accepted 30 cwts. thereof at the contract price. It does not appear but that the plaintiff could have obtained the entire remainder of 1470 cwts. of flour by simply paying the original contract price and withdrawing the same from storage where the defendant had placed it. This the plaintiff did not undertake to do. It affirmatively appears from the declaration as amended that there was, at the time the attachment was sued out, no such breach of the contract as entitled the plaintiff to recover the damages sought.

The situation as it appears from the plaintiff's declaration, as amended, is clearly and concisely outlined by the trial judge in dismissing the case on general demurrer as follows: "It appears plaintiff and defendant were in dispute as to the quantity of flour defendant agreed to sell J. S. Ross & Company in a contract acquired by plaintiff. Plaintiff attaches a letter dated January 9, 1948, to its declaration from defendant in which defendant sets out its contention, claims to have complied with the contract, but does not expressly refuse to ship any more flour under the contract. Later plaintiff ordered flour from the defendant which defendant shipped but under a higher price

than that stipulated in the contract. Plaintiff refused to accept the flour at the price. Thereafter defendant on _____ day of February, 1948, agreed with plaintiff to store the flour and to let plaintiff withdraw the flour from the storage at the price stipulated in the original contract. Accordingly defendant stored the flour. The contract required plaintiff to pay for the flour before delivery. Plaintiff thereupon withdrew a portion of the flour and could have withdrawn, by paying for same, all of it at the price contended for by plaintiff. Instead, plaintiff did not do so but delayed until March 16, 1948, and then sued out the attachment and had the flour seized thereunder. It does not seem plaintiff is entitled to recover."

It follows that the trial judge properly sustained the general demurrers of the defendant to the plaintiff's declaration in attachment as amended and did not err in dismissing the case.

*Judgment affirmed. Townsend and Carlisle, JJ., concur.*