57698. CCE FEDERAL CREDIT UNION v. CHESSER.

CARLEY, Judge.
On September 8, 1978, the appellant-credit union loaned to the appellee the sum of $2,900. The loan proceeds were issued to the appellee in the form of checks

---

made jointly payable to her and certain of her creditors she had designated as payees. The indebtedness was evidenced by a promissory note payable to the appellant and signed by both the appellee and a co-signer.

On that same day, after the checks were issued and the note signed, the co-maker informed the appellant that she no longer wished to serve in that capacity and renounced the signature she had earlier affixed to the note. Thereupon, the appellant informed appellee of her co-maker's actions and announced that it would obtain stop-payment orders on the checks it had earlier issued to her. The appellant further related that in the event appellee secured another co-maker, it would reissue the checks. It appears that appellant agreed to release the co-maker. However, appellant admits in this court that it could have insisted that the co-maker live up to her obligation.

Appellee brought suit against the appellant, alleging that she had forwarded the checks to her creditors, that they had been returned marked "payment stopped" and that because of the appellant's "willful, wanton, malicious" breach of its contract her credit standing had been adversely affected and she had suffered mental anguish and embarrassment. She prayed for both actual and punitive damages and attorney fees.

The appellant filed its answer, setting forth inter alia, the following defenses: anticipatory breach; failure of consideration and condition not complied with resulting in "no contract" (Code Ann. § 20-902); and, that any injuries and damages sustained were the result of acts by the appellee herself, the co-maker or other persons over whom the appellant had no control.

Appellee, pursuant to Code Ann. § 81A-112 (f), moved to strike the above enumerated defenses on the ground that they failed to "set forth facts sufficient to constitute any defenses to the claim sued upon in this cause." This motion came before the court for a hearing and was granted. The appellant petitioned this court for an interlocutory appeal. This application was granted so that we might review the grant of an order which determined "beyond doubt that plaintiff would be successful despite any state of facts which could be proved

in support of the defense. [Cit.]" *West v. Griggs,* 144 Ga. App. 285, 286 (1) (241 SE2d 26) (1977). We have studied the record, the briefs and the cases with great care and conclude that appellee's motion to strike meets this strict standard and, therefore, affirm the trial court.

1. The appellant urges that the renunciation by the co-maker of her signature was an anticipatory breach of her joint and several obligation to pay on the note and that this excuses it from further performance, justifies stopping payment on the checks issued to appellee and provides a defense to any liability on the contract. We do not agree.

"A contract is an agreement between two or more parties for the doing or not doing of some specified thing." Code Ann. § 20-101. "A contract is breached by a party to it who is bound by its provisions to perform some act toward its consummation, and who, without legal excuse on his part and through no fault of the opposite party, declines to do so." *Douglas v. McNabb Realty Co.,* 78 Ga. App. 845, 846 (3b) (52 SE2d 550) (1949). As the name implies, the "anticipatory repudiation" of a contract occurs when one party thereto repudiates his contractual obligation to perform prior to the time such performance is required under the terms of the contract. While technically such a repudiation is not a breach of contract, the contractual time for performance not having arrived, the law recognizes that under certain circumstances the innocent party to the contract may treat such an anticipatory repudiation as a breach thereof. Thus when one party to a bilateral contract of mutual dependent promises absolutely refuses to perform and repudiates the contract prior to the time of his performance, the innocent party is at liberty to consider himself absolved from any future performance on his part and has an election of several possible remedies, including the right to rescind the contract altogether and recover the value of any performance he has already rendered. *Nikas v. Hindley,* 98 Ga. App. 437, 441 (106 SE2d 335) (1958); *Henry v. Moss,* 99 Ga. App. 623, 626 (109 SE2d 313) (1959); *Cutcliffe v. Chesnut,* 122 Ga. App. 195, 201 (2) (176 SE2d 607) (1970).

The contract here, however, was not only bilateral

but also consisted of joint and several promises by the appellee and her co-maker to pay under the terms of the promissory note. The appellant had as consideration for its loan two promises and two promisors — the promise of the appellee to be jointly and severally liable on the promissory note and a similar promise by the co-maker — but three contracts. "A joint and several contract is a contract with each promisor and a joint contract with all; therefore in a joint and several contract there is one more contract than there are promisors." 17A CJS 350, Contracts, § 355 (a) (1). Thus the appellant could look to appellee or to the co-maker or to both for payment. *Ghitter v. Edge,* 118 Ga. App. 750, 752 (2) (165 SE2d 598) (1968). Therefore, when the appellant voluntarily released the co-maker upon her repudiation of her joint and several liability under the note, there was still in existence a valid, enforceable and unrepudiated contract existing between the appellant and appellee. Cf. *Simpson v. Wages,* 119 Ga. App. 324 (167 SE2d 213) (1969).

On this analysis it is clear that the co-maker's anticipatory repudiation of the contract was to her covenant to be jointly and severally liable on the note. The appellant was not required to release her from her obligation; it clearly had the election to await time for performance of the contract and to bring suit after that time had arrived.[1] *Nikas v. Hindley,* supra. It chose, however, to rescind, discharging the co-maker from her obligations under the contract and leaving the appellee with a valid and enforceable contract upon which she remained liable. *Simpson v. Wages,* supra. The appellant would have us go farther and hold that the actions of the co-maker justify its decision to rescind appellee's contract. However, nonperformance of covenants is the only ground for rescission of a contract without the consent of the other

---

[1]We do not rule on whether, under the circumstances and terms of the note, the actions of the co-maker would have authorized an immediate suit on the note. See generally 11 Williston on Contracts, § 1326 (3d Ed. 1968). "[I]t is probable that no court would enforce a promissory note prior to the date of its maturity, . . . " Id., p. 145.

party, *White v. Hand,* 76 Ga. 3 (1885), and at no time was appellee in breach of her obligations under the contract. We know of no rule of law which would allow the breach of one contract to suffice as grounds for the rescission of another separate and distinct contract; indeed, the well established rule is to the contrary. Annot., 27 ALR 1157 (1923).

We, therefore, hold that the appellant was authorized at its election to treat the actions of the co-maker as an anticipatory breach and to rescind its contract as to her. Any imputation of the co-maker's breach to appellee would, we believe, be only to the extent of the latter's joint liability under the note (which has, of course, been discharged by the appellant's release of the co-maker). The appellant was not authorized to rescind its separate and independent contract with appellee because of the co-maker's repudiation. Therefore, anticipatory breach by the co-maker not justifying the rescission of appellee's contract, the motion to strike this defense was proper.

2. The appellant next urges that "the co-maker's participation on the note was a condition of the contract and the co-maker's repudiation was a failure of this condition and of the consideration to the appellant relieving it of its obligation and affording it with the right to stop payment on the checks." It is apparent from the appellant's brief that as to this enumeration of error it merely reargues its position that the co-maker's repudiation was a breach which justified the rescission of the contract between it and appellee. As discussed above, this defense is not available. We, therefore, need only say that the appellant sought and received appellee's and co-maker's joint and several liability on the note. There was no requirement that the appellee insure that her co-maker would not breach the contract, anticipatorily or otherwise. Indeed, appellee and her co-maker were jointly and severally liable to insure that in the event of breach by either the appellant would have a binding contract with and the enforceable liability of the nonbreaching party. When the co-maker repudiated her liability thereunder, the appellant was not required to discharge her — it could have waited for performance. Therefore,

the appellant received what it bargained for — joint and several liability of two parties — and the fact that it no longer has it results from the appellant's own actions in discharging the co-maker. Under these circumstances we do not believe that the appellant should be allowed to plead defensively the failure of a condition of the contract — in that appellee was only individually and not jointly and severally liable on the note — when appellee's status results totally from the actions of the appellant. Cf. *Bancroft v. Conyers Realty Co.,* 63 Ga. App. 106 (2) (10 SE2d 286) (1940). It was not error to strike these defenses.

3. Finally, appellant enumerates as error the striking of the following defense: "Defendant [appellant] alleges that any injuries and damages sustained by Plaintiff [appellee] resulted from the acts of a person or persons other than Defendant [appellant], including the Plaintiff [appellee], and the aforesaid [co-maker] over whom this Defendant [appellant] had no control and for whose actions this Defendant [appellant] is not liable." Insofar as this "defense" seeks to establish that the actions of the co-maker justified the rescission of appellee's contract, it was properly stricken for the reasons discussed in Divisions 1 and 2 above.

If the appellant wishes to demonstrate that the injuries and damages appellee has allegedly sustained were "remote or consequential" (Code Ann. § 20-1406), were not "such as the parties contemplated, when the contract was made, as the probable result of its breach" (§ 20-1407) or that appellee failed "to lessen the damages as far as practicable by the use of ordinary care and diligence" (§ 20-1410), it may amend its answer pursuant to Code Ann. § 81A-115 (a) or proceed with such evidence under the general denials contained in its answer.

4. Although we are affirming the trial court's order striking the specific defenses discussed in this opinion, we emphasize that our decision does not in any way vitiate or diminish appellee's obligation to prove her right to recover and the damages to which she is entitled, if any.

*Judgment affirmed. Banke, Acting P. J., and Underwood, J., concur.*

ARGUED APRIL 10, 1979 — DECIDED MAY 23, 1979 —

Rehearing denied June 19, 1979 —

*Hatcher, Stubbs, Land, Hollis & Rothschild, James E. Humes, II,* for appellant.

*Grogan, Jones, Layfield & Agnew, Lee R. Grogan,* for appellee.