### A01A0976. J. KINSON COOK, INC. et al. v. WEAVER.
(556 SE2d 831)

SMITH, Presiding Judge.

In this appeal, we must construe the notice provisions of former OCGA § 36-82-104 as they apply to a payment dispute between a general contractor, its surety, and a sub-subcontractor claimant.[1] Glen Weaver d/b/a Glen Weaver Construction Company brought this action against Rotell & Company, J. Kinson Cook, Inc., and the American Insurance Company, respectively a subcontractor, the general contractor, and the surety on a public works contract for construction of a school. Weaver was engaged by Rotell as a sub-subcontractor to perform earthmoving services at the site. He brought this action seeking payment from Rotell for his services and payment under the bond from Cook and American.[2] During the trial of the case before a jury, Cook and American moved for a directed verdict on the issue of the Notice of Commencement required by OCGA § 36-82-104, the failure of Weaver to provide the Notice to Contractor also required by that Code section, and the alternative ground of recovery asserted by Weaver in quantum meruit. The motion for directed verdict was denied, the jury returned a verdict in favor of Weaver, and Cook and American appeal. Because the trial court should have granted a directed verdict on the basis of Weaver's failure to provide the statutory Notice to Contractor, and because no claim in quantum meruit is permissible under the facts of this case, we reverse.

1. Former OCGA § 36-82-104 (f)[3] provided in pertinent part:

> The contractor furnishing the payment bond or security deposit shall post on the public work site and file with the clerk of the superior court in the county in which the public

---

[1] Ga. L. 2000, p. 498 et seq. revised and renumbered the Georgia statutes pertaining to public works. The provisions of former OCGA § 36-82-104, slightly revised, were incorporated in OCGA §§ 36-91-72 and 36-91-73. Ga. L. 2001, p. 820, § 12 renumbered these provisions as OCGA §§ 36-91-92 and 36-91-93. The same provisions also are incorporated almost verbatim in OCGA §§ 13-10-62 and 13-10-63.

[2] Rotell was declared in default, and judgment was entered against it in favor of Weaver and in favor of Cook on its cross-claim.

[3] See also OCGA §§ 13-10-62 (a); 36-91-92 (a).

work is located a Notice of Commencement no later than 15 days after the contractor physically commences work on the public work and give a copy of the Notice of Commencement to any subcontractor, materialman, or person who makes a written request of the contractor.

Subsection (g) of the same Code section[4] provided: "The failure to file a Notice of Commencement under subsection (f) of this Code section shall render the Notice to Contractor requirements of paragraph (2) of subsection (b) of this Code section inapplicable."

Former OCGA § 36-82-104 (b)[5] provided two alternative methods for a sub-subcontractor to recover under a payment bond on a public works project, depending upon whether the contractor furnishing the bond complied with the provisions of subsection (f). If the contractor failed to comply, the sub-subcontractor acquired a right of action upon the payment bond by

giving written notice to the contractor within 90 days from the day on which such person did or performed the last of the labor or furnished the last of the material or machinery or equipment for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was performed or done.

Former OCGA § 36-82-104 (b) (1). On the other hand, if the contractor complied with former OCGA § 36-82-104 (f), the sub-subcontractor had "the right of action on the payment bond or security deposit, provided that such person shall, within 30 days from the filing of the Notice of Commencement or 30 days following the first delivery of labor, material, machinery, or equipment, whichever is later, give to the contractor a written Notice to Contractor" containing specific information prescribed by the subsection. Former OCGA § 36-82-104 (b) (2).

In construing the requirements of this Code section, we must first consider an apparent ambiguity between subsections (b) and (g) of former OCGA § 36-82-104, an ambiguity which remains in the current Code provisions. Subsection (b) made the alternate provisions of (b) (1) and (b) (2) dependent upon whether the contractor "complied with the Notice of Commencement requirements in accordance with subsection (f) of this Code section," which required filing and posting of the Notice of Commencement. Subsection (g), however, appeared

---

[4] See also OCGA §§ 13-10-62 (b); 36-91-92 (b).
[5] See also OCGA §§ 13-10-63 (a); 36-91-93 (a).

to require only *filing* and not *posting* of the Notice of Commencement, as only failure to file removed the contractor from the purview of subsection (b) (2). From this inconsistency, Cook and American argue that filing of the notice was sufficient. It is undisputed that Cook *filed* its Notice of Commencement no later than 15 days before starting construction.

In construing the provisions of this former Code section, we must bear in mind that the statutes governing payment bonds on public works projects were enacted for the benefit of materialmen and subsubcontractors and therefore should be "liberally construed to secure that object. [Cits.]" *Huddleston Concrete Co. v. Safeco Ins. Co. &c.*, 186 Ga. App. 531, 533 (1) (368 SE2d 117) (1988). But we must also consider the general rules of statutory construction:

> Words must be given their plain and ordinary meaning, except for words which are terms of art or have a particular meaning in a specific context. OCGA § 1-3-1 (b). We must seek to effectuate the intent of the legislature, OCGA § 1-3-1 (a), and to give each part of the statute meaning and avoid constructions that make some language mere surplusage. All parts of a statute should be harmonized and given sensible and intelligent effect, because it is not presumed that the legislature intended to enact meaningless language.

(Citations omitted.) *Osborne Bonding &c. Co. v. State of Ga.*, 224 Ga. App. 590, 591 (481 SE2d 578) (1997). Applying these rules to the ambiguities contained in former OCGA § 36-82-104, we conclude that the statute, when read as a whole, requires posting of the notice but imposes the 15-day requirement only upon the filing of the notice in order to give effect to the Notice to Contractor requirements of former OCGA § 36-82-104 (b) (2).

We look first at the body of former OCGA § 36-82-104 (f), which states the contractor's duties with regard to the Notice of Commencement. The operative clause provides that the contractor "shall post on the public work site and file with the clerk of the superior court in the county in which the public work is located a Notice of Commencement no later than 15 days after the contractor physically commences work on the public work." If the phrase creating the 15-day requirement were offset by commas and placed at the beginning of the clause, it clearly would apply to both the posting and filing requirements. In contrast, the absence of offsetting commas suggests that a phrase modifies only the language immediately adjoining.

*Amica Mut. Ins. Co. v. Bourgault*, 263 Ga. 157, 159-160 (1) (429 SE2d 908) (1993).[6]

This interpretation is confirmed by comparison with former OCGA § 36-82-104 (b) (2), which in distinct contrast to subsection (f) places its time requirement at the beginning of the clause and offsets it with commas, showing that it applies to all the following subsections. In attempting to give meaning to this distinction in language by the legislature, we conclude that the 15-day requirement was intended to apply only to the filing of the notice with the clerk of the superior court.

This interpretation harmonizes subsection (g) of former OCGA § 36-82-104 with the requirements of subsection (f), since under this construction there is no conflict between complying with the provisions of subsection (f) and the limitation of subsection (g) to filing of the Notice of Commencement. It also harmonizes with former OCGA § 36-82-104 (b), which calculates the time for the sub-subcontractor's Notice to Contractor from the filing of the Notice of Commencement rather than its posting. The use of the filing rather than posting date also facilitates determination of compliance with the Code section because (as shown by the testimony in this case) the exact time at which a notice is posted on a job site is subject to dispute and dependent upon the recollections of various employees of the contractor or the sub-subcontractor, while the fact and date of filing of a notice are easily determined and proved by the clerk of court's official date stamp.

Weaver argues that the notice must be filed *within* the 15-day period following the start of construction *and no earlier* and that Cook's filing therefore is premature. But this interpretation is not justified by the wording of the statute. Former OCGA § 36-82-104 (f) provided that the relevant time shall be *"no later than 15 days"* after physical commencement of the work. (Emphasis supplied.) Cook filed the Notice of Commencement no later than 15 days after commencement of the work. Since Weaver acknowledged that he failed to send a Notice to Contractor, his claim is barred by former OCGA § 36-82-104 (b) (2).

2. The trial court also erred in allowing Weaver's claim to go to the jury on the basis of quantum meruit. "Under Georgia law, a materialman or subcontractor may not recover against an owner or general contractor with whom it has no contractual relationship, based on the theory of unjust enrichment or implied contract; rather,

---

[6] In *Amica*, the Supreme Court concluded that offsetting commas were inadvertently omitted in a clerical revision of the Code section at issue. But here, the relevant language of former OCGA § 36-82-104 was enacted by Ga. L. 1993, p. 1003, § 1 et seq. and has never contained offsetting commas.

it is limited to the statutory remedies provided by Georgia's lien statute." (Citations and punctuation omitted.) *Hussey, Gay & Bell v. Ga. Ports Auth.*, 204 Ga. App. 504, 506 (2) (420 SE2d 50) (1992). In *Hussey*, this court applied to a public works contract the longstanding rule applicable to private contracts and the Georgia mechanic's lien statute. Id.; see *P.P.G. Indus. v. Hayes Constr. Co.*, 162 Ga. App. 151-152 (1) (290 SE2d 347) (1982).

*Judgment reversed. Barnes and Phipps, JJ., concur.*

DECIDED NOVEMBER 26, 2001 —
RECONSIDERATION DENIED DECEMBER 13, 2001 —

*Griffin, Cochrane & Marshall, John D. Marshall, Jr., Ronald J. Stay, Jr., Keith A. Pittman*, for appellants.

*Chesnut, Livingston & Pye, Tom Pye*, for appellee.