A09A2342. WESTERN SURETY COMPANY et al.
v. APAC-SOUTHEAST, INC.
(691 SE2d 234)

ANDREWS, Presiding Judge.

This dispute arose when APAC-Southeast, Inc., a provider of asphalt, assigned its subcontract with Bruce Albea Contracting, Inc. to C. W. Matthews Contracting Company, Inc. before the completion of a road project for the Georgia Department of Transportation. Although the subcontract specified that it could not be assigned, and although Matthews did not finish the project, APAC sued Albea and its sureties, Western Surety Company and Continental Casualty Company, for breach of contract and under a payment bond. The trial court granted APAC summary judgment against all three defendants for over $1.2 million plus interest. On appeal, defendants argue that the trial court erred when it granted APAC summary judgment because APAC's breach by reason of assignment negates its claim against both Albea and its sureties. Defendants also assert that the trial court erred when it awarded pre-judgment interest. We agree that APAC has no breach of contract claim, but affirm because defendants are jointly and severally liable under the payment bond and because the issue of interest was not disputed in the trial court.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. . . . [T]he burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citations omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

So viewed, the record shows that Albea was the general contractor on a public works project to widen Highway 27 in Heard and

Troup Counties when it entered into a subcontract dated February 2004 under which APAC would provide the project with asphalt paving. The subcontract provided that APAC could not assign the subcontract without Albea's written consent. That same month, Albea and its sureties executed a $24 million payment bond providing that they were jointly and severally liable for "all persons doing work or furnishing skill, tools, machinery, or materials under or for the purpose of" the Highway 27 project.

In the course of the parties' performance, prices for asphalt, fuel, and oil increased dramatically. Albea withheld payments in a dispute over the quantities of asphalt APAC had installed, and APAC threatened to escalate the payments due to it.

On September 18, 2006, APAC sold and assigned most of its assets, including its asphalt plant and its current subcontracts, to Matthews. The assignment of the subcontract at issue here included a provision that APAC would retain any payments for work performed before the assignment. Although the assignment was sent to Albea, it never acknowledged or signed the form. According to Albea's own accountant, Albea owed APAC $1,202,745.98 for work already performed before the assignment.

For some months following the assignment, Matthews performed work for Albea, and Albea paid Matthews for that work. According to its own president, Albea "acquiesced" to the delegation of performance to Matthews because it could not find an alternative subcontractor and could not risk breaching its own contract with the DOT. In the spring of 2007, however, Matthews notified Albea that it would not work further at the subcontract's rates for fuel and supplies. Having failed to find a third subcontractor, Albea agreed, but insisted that this constituted a "new agreement" and reserved its right to pursue legal remedies regarding the cost increases. As a result of this and other circumstances, Albea's finances deteriorated. On April 19, 2007, the sureties paid Matthews over $360,000 for its work on the project, and eventually paid more than $2.7 million in excess of the costs agreed to in the original subcontract.

In March and again in April 2007, Albea requested that its sureties pay APAC the outstanding $1.2 million for the work performed before the assignment. On March 19, APAC sued Albea for nonpayment under the subcontract. Both parties later moved for summary judgment, which the trial court granted to APAC against all three defendants jointly and severally.

1. The defendants first argue that APAC's assignment of the subcontract amounted to a breach sufficient to abrogate any claim under that subcontract. We agree.

(a) As a preliminary matter, we note that although the subcontract at issue here involved both goods and services, APAC itemized

its payment requests in terms of the quantities of asphalt and other materials supplied. As a result, we look to the Uniform Commercial Code to determine the consequences of APAC's assignment. See *D. N. Garner Co. v. Ga. Palm Beach Aluminum Window Corp.*, 233 Ga. App. 252 (504 SE2d 70) (1998) (where contractor's bid did not segregate price of goods from price of services, the contract was predominantly for the sale of goods and was thus subject to the UCC).

(b) As APAC concedes, its assignment of the subcontract was in violation of Georgia law. OCGA § 11-2-210 provides in relevant part:

> (1) A party may perform his duty through a delegate *unless otherwise agreed or unless the other party has a substantial interest in having his original promisor perform or control the acts required by the contract. No delegation of performance relieves the party delegating of any duty to perform or any liability for breach.*
>
> . . .
>
> (5) *An assignment of "the contract"* or of "all my rights under the contract" . . . is an assignment of rights[,] and unless the language or the circumstances (as in an assignment for security) indicate the contrary, it *is a delegation of performance of the duties of the assignor and its acceptance by the assignee constitutes a promise by the assignee to perform those duties.* This promise is enforceable by either the assignor or the other party to the original contract.
>
> . . .

(Emphasis supplied.) Put more succinctly by the Supreme Court of Georgia, an anti-assignment clause should be enforced "when that clause was inserted to protect a party from a material reduction in the value of the contract." *Singer Asset Finance Co. v. CGU Life Ins. Co. of America*, 275 Ga. 328, 329 (1) (567 SE2d 9) (2002).

The subcontract at issue was part of APAC's sale of most of its assets, including its asphalt plant and ongoing contracts, to Matthews. Given Albea's testimony that it had a "substantial interest" in maintaining APAC as the performer of the subcontract, OCGA § 11-2-210 (1), and that it looked for but was unable to retain any other asphalt provider besides Matthews, we cannot permit APAC to prevail on summary judgment against Albea in the wake of APAC's repudiation of that subcontract, including the provision not to delegate performance. As we have held:

> [A] party's refusal to abide by a contract provision prohibiting assignment, or any other relinquishing of contractual

YALE LAW LIBRARY

obligations, is properly considered a repudiation of the contract amounting to an anticipatory breach. Such a repudiation of the agreement estops [the breaching party] from seeking to enforce other provisions of the agreement.

*Forest Commodity Corp. v. Lone Star Indus.*, 255 Ga. App. 244, 247-248 (2) (564 SE2d 755) (2002); see also *Schoenbaum Ltd. Co. v. Lenox Pines, LLC*, 262 Ga. App. 457, 464-465 (585 SE2d 643) (2003) (enforcing anti-assignment clause even when assignor had no further duties under the contract); *Mingledorff's, Inc. v. Hicks*, 133 Ga. App. 27, 28 (2) (209 SE2d 661) (1974) (enforcing anti-assignment clause). And as Corbin explains:

When a contract contains express words forbidding one party to assign the contract, usually more is intended than that he shall not repudiate his duty by assigning it to another and escaping; it indicates that *his duty is one that he cannot perform vicariously by delegating the performance to another.* Such a provision makes the party's reciprocal *right to compensation dependent and conditional on his own personal performance of the agreed exchange. . . .*

(Emphasis supplied.) Corbin on Contracts, Vol. 9, Ch. 49, § 872, p. 429 (1951, repr. 2002).

It follows that the trial court could not have properly granted summary judgment against Albea by reason of its apparent "acquiescence" in APAC's breach of the subcontract.

2. The outcome is different as to APAC's claim under the payment bond, however. As part of the Little Miller Act, OCGA § 13-10-63[1] creates a cause of action for claims arising under contracts for public works projects:

(a) Every person entitled to the protection of [a] payment bond or security deposit required to be given who has not been paid in full for *labor or materials furnished in the prosecution of the work* referred to in such bond or security deposit before the expiration of a period of 90 days after the day on which the last of the labor was done or performed by such person . . . shall have the right to bring an action on such payment bond or security deposit for the amount, or the balance thereof, unpaid at the time of the commencement of such action. . . .

---

[1] See Ga. L. 2001, p. 820, § 1; see also former OCGA § 36-82-104 as well as current OCGA § 36-91-93 (concerning payment bonds in county and municipal projects); *J. Kinson Cook, Inc. v. Weaver*, 252 Ga. App. 868, 870 (556 SE2d 831) (2001).

(Emphasis supplied.) Such a claim is essentially one for quantum meruit, or "as much as he deserves,"

> an equitable doctrine based on the concept that no one who benefits from the *labor and materials* of another should be unjustly enriched thereby. Where quantum meruit is applicable, the provider may recover the reasonable value of goods or services transferred, but *value is defined in terms of value to the recipient*.

(Emphasis supplied.) *Nelson & Hill, P.A. v. Wood*, 245 Ga. App. 60, 62-63 (1) (537 SE2d 670) (2000). "[T]he statutes governing payment bonds on public works projects were enacted for the benefit of materialmen and sub-subcontractors and therefore should be liberally construed to secure that object." (Citation and punctuation omitted.) *J. Kinson Cook, Inc. v. Weaver*, supra, 252 Ga. App. 868, 870 (556 SE2d 831) (2001).

As the beneficiary of the bond, APAC has stated a cause of action against the sureties. See *Barton Malow Co. v. Metro Mfg.*, 214 Ga. App. 56, 57 (446 SE2d 785) (1994) (all subcontractors providing goods and services on public works projects, and not just those in privity, may bring suit against contractors and their sureties); *Pacific Nat. Fire Ins. Co. v. Cummins Diesel of Ga.*, 213 Ga. 4, 7 (2) (96 SE2d 881) (1957) (materialman may bring suit in its own name under bond made by other parties). The sureties cannot be held to any greater liability than Albea, however, unless they consented to the assignment. See OCGA § 10-7-21 ("novation, without the consent of the surety, discharges him"); *Vickers v. Chrysler Credit Corp.*, 158 Ga. App. 434, 436 (1) (280 SE2d 842) (1981) ("in the absence of waiver or estoppel[,] we see no reason why a guarantor may not assert [a] 'commercially reasonable' defense which would be available to his principal").

The payment bond is unambiguous as to the sureties' responsibility for paying *anyone* providing labor or materials to the project. APAC retained the right to payment concerning all work done before the assignment in September 2006, a right which Matthews has never contested. Most important, the sureties themselves negotiated a new agreement with Matthews in April 2007. The new agreement referred to the original subcontract and the payment bond and paid Matthews over $360,000 for work performed in the fall of 2006.

Because the sureties consented to the delegation of APAC's duties under the subcontract to Matthews, they remain liable to APAC for the labor and materials expended before that assignment. Albea's own evidence establishes the amount due as that specified in the trial court's judgment, and defendants agreed to be jointly and

severally liable for such sums in their payment bond. Thus the trial court did not err when it granted summary judgment to APAC against all three defendants. See *I. Perlis & Sons v. Peacock Constr. Co.*, 222 Ga. 723, 726 (152 SE2d 390) (1966) (dismissing plaintiff contractor's contract claim for balance due where he failed to allege that certificate of satisfactory completion, a condition precedent to payment, had been issued, but sustaining quantum meruit claim).

3. Defendants also challenge the trial court's award of pre-judgment interest. The record shows that APAC presented written argument on this issue at summary judgment, with defendants disputing neither APAC's claim nor its method of calculating the amount of the award. Thus no question has been presented for our review. See *OVIP, Inc. v. Blockbuster Textiles*, 289 Ga. App. 276, 278-279 (656 SE2d 907) (2008) (appellee's failure to challenge the enforceability of a liquidated damages provision meant that the issue was not presented for appellate review); compare OCGA § 51-12-14 (a) (requiring written notice concerning pre-judgment interest on unliquidated damages in tort action).

*Judgment affirmed. Miller, C. J., concurs. Barnes, J., concurs specially.*

BARNES, Judge, concurring specially.

Although I agree that APAC-Southeast is entitled to the judgment awarded by the trial court, I do not agree[2] with the majority's reasoning.

> As the name implies, the "anticipatory repudiation" of a contract occurs when one party thereto repudiates his contractual obligation to perform prior to the time such performance is required under the terms of the contract. While technically such a repudiation is not a breach of contract, the contractual time for performance not having arrived, the law recognizes that under certain circumstances the innocent party to the contract may treat such an anticipatory repudiation as a breach thereof. Thus when one party to a bilateral contract of mutual dependent promises absolutely refuses to perform and repudiates the contract prior to the time of his performance, the innocent party is at liberty to consider himself absolved from any future performance on his part and has an election of several possible remedies, including the right to rescind the

---

[2] Because I do not agree with all that is said, this opinion is physical precedent only. Court of Appeals Rule 33 (a).

contract altogether and recover the value of any performance he has already rendered.

*CCE Fed. Credit Union v. Chesser*, 150 Ga. App. 328, 330 (1) (258 SE2d 2) (1979). This is true whether the contract is wholly executory or has been partially executed. *Shell Petroleum Corp. v. Jackson*, 47 Ga. App. 667, 670 (171 SE 171) (1933).

A repudiation of the contract, however, is not self executing. The injured party must elect its remedies. Here, Albea did nothing: It did not seek rescission, did not sue for damages, and did not demand that APAC perform. Instead, although not formally giving its approval to the assignment, it treated APAC's assignee, C.W. Matthews, as a party to the contract by accepting the asphalt provided by C.W. Matthews and by ultimately reaching a new agreement with C.W. Matthews. Moreover, Albea has never denied that it owes APAC the amount APAC claims. Under the circumstances, Albea waived its formal approval of the assignment and is estopped from denying the assignment. *Breus v. McGriff*, 202 Ga. App. 216 (413 SE2d 538) (1991); *Merchants Grocery Co. v. Shawnee Milling Co.*, 86 Ga. App. 848, 852 (72 SE2d 797) (1952). See *Splish Splash Waterslides v. Cherokee Ins. Co.*, 167 Ga. App. 589, 593 (4) (c) (307 SE2d 107) (1983) (" 'Where a landlord treats a lease as assigned, even though the original lessee had no right to assign it without his consent, he is estopped from setting up (as a defense) that the assignment of his contract is made without his consent.' [Cit.]") (citation and punctuation omitted).

Accordingly, even though I do not concur fully with the majority opinion, I concur with its judgment affirming the trial court.

DECIDED JANUARY 14, 2010 —
RECONSIDERATION DENIED MARCH 8, 2010 —

*Thompson, Slagle & Hannan, Jefferson B. Slagle, McRae, Stegall, Peek, Harman, Smith & Mannin, Michael D. McRae, Robert T. Monroe*, for appellants.

*Toler & Hanrahan, Timothy N. Toler, Mark V. Hanrahan*, for appellee.