## A09A1209. RAMOS-SILVA v. STATE FARM MUTUAL INSURANCE COMPANY.

(686 SE2d 345)

BERNES, Judge.

The issue in this case is whether an uninsured motorist insurer can sue a tortfeasor for subrogation after the tortfeasor has been released from personal liability except to the extent that insurance coverage, other than the tortfeasor's personal liability policy, exists. Because we answer this question in the affirmative, we affirm the judgment of the trial court.

The pertinent facts of this case are undisputed. Appellant Roberto R. Ramos-Silva was involved in a motor vehicle collision with Mary Reddy, the insured of appellee State Farm Mutual Insurance Company. Reddy was injured in the collision. Ramos-Silva's liability insurer paid Reddy and her husband[1] $25,000, the limit of available liability coverage under Ramos-Silva's policy, in exchange for their execution of a document entitled "Limited Liability Release Pursuant to OCGA § 33-24-41.1" (the "Limited Release"). The Limited Release expressly provided that "[t]his Limited Release is entered into pursuant to the provisions set forth in OCGA § 33-24-41.1, and it is intended that the force and effect of th[e] Limited Release shall be as intended by the aforementioned Code section." It released completely Ramos-Silva's insurer from future liability for Reddy's injuries and released Ramos-Silva from personal liability "except to the extent other insurance coverage, including, but not limited to uninsured or underinsured motorist benefits, is available which covers the claim or claims of [Reddy and her husband] against [Ramos-Silva]."

Following Reddy's settlement with Ramos-Silva, State Farm paid Reddy an additional $75,000 pursuant to the Uninsured Motorist ("UM") provision of her automobile insurance policy. State Farm then filed the present action against Ramos-Silva seeking subrogation for the money it paid to Reddy. Ramos-Silva moved for summary judgment, arguing that the Limited Release barred State Farm's action. The trial court denied Ramos-Silva's motion, and this Court granted his application for interlocutory appeal.

Ramos-Silva argues that because State Farm's right to subrogation was not expressly reserved within the Limited Release, OCGA § 33-24-41.1 extinguished that right.[2] Our analysis of Georgia's statutory scheme, however, leads us to a different conclusion.

---

[1] Reddy's husband had asserted a claim for loss of consortium.

[2] Ramos-Silva further contends that, since the action was brought, not by the Reddys but by State Farm, the subrogation action was barred by the following language contained in the

Under Georgia law, motor vehicle liability insurers are required to provide UM coverage unless it is expressly rejected by their insured. OCGA § 33-7-11 (a) (1), (3). In turn, the Georgia Legislature has statutorily granted to the UM insurers a right to subrogation. See OCGA § 33-7-11 (f) ("An insurer paying a claim under the [required UM] endorsement or provisions . . . shall be subrogated to the rights of the insured to whom the claim was paid against the person causing such injury, death, or damage to the extent that payment was made. . . .").

In situations such as the instant case where a claim that arises out of a motor vehicle accident is covered both by a personal liability insurer and a UM insurer, OCGA § 33-24-41.1 authorizes the execution of a limited liability release. The statutory limited release operates to release completely the settling insurance provider from all liability stemming from the claimant's injuries, see OCGA § 33-24-41.1 (a), and release "the insured tortfeasor covered by the policy of the settling carrier from all personal liability . . . except to the extent other insurance coverage is available which covers such claim or claims." OCGA § 33-24-41.1 (b). Under the express provisions of the statute, a UM insurer cannot prohibit its insured from settling any claim with a tortfeasor's liability insurer nor can it require its permission to settle any claim. OCGA § 33-24-41.1 (c). Further, and significantly, the statute provides that the execution of a limited release does not in any way affect the duty that the settling insurer otherwise has to defend its insured in a subrogation action. OCGA § 33-24-41.1 (d) (3).

When read together, we reject Ramos-Silva's contention that OCGA § 33-24-41.1 is intended to extinguish the UM insurer's right to subrogation granted by OCGA § 33-7-11 (f). In reaching this conclusion, we are mindful of the following rules of statutory construction:

> It is axiomatic that if an enactment is plain and unambiguous, we must give its words their plain and ordinary meaning, except for words which are terms of art or have a

---

Limited Release:
> This release shall operate [as] . . . a release of [Ramos-Silva] except that this Limited Release shall not bar any claims the [Reddys] ha[ve] against [Ramos-Silva] to the extent other insurance coverage is available which covers the claim or claims of the [Reddys] against [Ramos-Silva].

Ramos-Silva, as the movant, waived this argument by failing to raise this issue in the trial court; therefore, we will not consider this claim of error on appeal. *BTL COM Ltd., Co. v. Vachon*, 278 Ga. App. 256, 258, n. 2 (628 SE2d 690) (2006). We nevertheless note that, as a subrogee of Reddy, State Farm "stands in [her] shoes" and is entitled to pursue any cause of action assigned to it. *Landrum v. State Farm &c. Ins. Co.*, 241 Ga. App. 787, 788 (527 SE2d 637) (2000).

particular meaning in a specific context. OCGA § 1-3-1 (b). We must seek to give meaning to each part of the statute and to avoid constructions which render a portion of the statute mere surplusage. A statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes "in pari materia," are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto. Finally, it is a basic rule of construction that a statute or constitutional provision should be construed to make all its parts harmonize and to give a sensible and intelligent effect to each part, as it is not presumed that the legislature intended that any part would be without meaning.

(Citations and punctuation omitted.) *City of Buchanan v. Pope*, 222 Ga. App. 716, 717 (1) (476 SE2d 53) (1996). See also *Goldberg v. State*, 282 Ga. 542, 546 (651 SE2d 667) (2007); *In re Carter*, 288 Ga. App. 276, 282-283 (1) (653 SE2d 860) (2007); *Bennett v. Wood*, 188 Ga. App. 630, 632 (1) (373 SE2d 645) (1988).

Guided by these principles, we note that in enacting OCGA § 33-24-41.1, the legislature did not expressly revoke the right to subrogation that it unequivocally granted in OCGA § 33-7-11 (f). Rather, it explicitly stated that the execution of a limited release does not release the settling insurer from any duty that it otherwise has to defend its insured against a subrogation action. OCGA § 33-24-41.1 (d) (3). Construing the statutes in the manner proposed by Ramos-Silva would render meaningless subsection (d) (3), which we cannot do. See *Footstar v. Liberty Mut. Ins. Co.*, 281 Ga. 448, 450 (637 SE2d 692) (2006); *Gilbert v. Richardson*, 264 Ga. 744, 747-748 (3) (452 SE2d 476) (1994); *Moritz v. Orkin Exterminating Co.*, 215 Ga. App. 255, 256-257 (450 SE2d 233) (1994). Moreover, to construe OCGA § 33-24-41.1 so as to extinguish the subrogation right expressly granted in OCGA § 33-7-11 (f) would actually create a conflict in the statutory provisions that does not otherwise exist, in contravention of our duty to construe them in a consistent and harmonious manner. See *Goldberg*, 282 Ga. at 546-547; *Aircraft Spruce &c. Co. v. Fayette County Bd. of Tax Assessors*, 294 Ga. App. 241, 244-246 (669 SE2d 417) (2008); *Bennett*, 188 Ga. App. at 631-632 (1). And finally, it is inconsistent with the statutory scheme in which a UM insurer has been rendered powerless to interfere with a claimant's decision to settle a claim to then impose a duty upon the UM insurer to ensure that its right to subrogation is preserved in the release document itself. For these combined reasons, we hold that the subrogation right granted by OCGA § 33-7-11 (f) survives the execution of a limited release executed pursuant to

OCGA § 33-24-41.1.

Our conclusion is buttressed by the case of *Rodgers v. St. Paul Fire &c. Ins. Co.*, 228 Ga. App. 499, 500-502 (1) (492 SE2d 268) (1997), in which we held that a claimant who executed a general release after settling with the tortfeasor's liability insurer could not then seek recovery from his UM insurer. We contrasted the appellant's full and general release of his claims with a limited release executed pursuant to OCGA § 33-24-41.1:

> Under OCGA § 33-24-41.1 (b) (2), the injured party may provide a limited release to the tortfeasor, releasing him from all personal liability *"except* to the extent other insurance coverage is available which covers such claim or claims."* (Emphasis supplied.) The statute further clearly states that such a limited release "shall not . . . release the tort-feasor from personal liability to the extent that there is other insurance in effect which covers the said claim or claims." OCGA § 33-24-41.1 (d) (4). Under these statutory provisions, the injured party who executes such a limited release may still proceed to judgment against the tortfeasor. Such a release under those conditions would not bar proceeding against the [UM] carrier. The limited release therefore does not affect the injured party's ability to obtain a judgment against the tortfeasor, but merely limits the tortfeasor's personal liability to the amount of available insurance coverage.

Id. at 500-501 (1). And, as we have previously recognized, "one of the equitable purposes of subrogation [is] to deter wrongdoing by placing the ultimate responsibility for paying an obligation on the person who in equity and good conscience ought to pay for it." (Citation and punctuation omitted.) *Landrum v. State Farm &c. Ins. Co.*, 241 Ga. App. 787, 790 (527 SE2d 637) (2000). We therefore conclude that the trial court did not err in denying Ramos-Silva's motion for summary judgment.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 2, 2009 ▉▉▉▉▉▉

*Downey & Cleveland, Russell B. Davis, Mary E. Priest*, for appellant.

*Candace M. Boutwell*, for appellee.