A11A1871. NORTHEAST GEORGIA CANCER CARE, LLC
v. BLUE CROSS AND BLUE SHIELD OF GEORGIA,
INC. et al.
A11A1872. HUDGENS v. BLUE CROSS AND BLUE SHIELD OF
GEORGIA, INC. et al.
(726 SE2d 714)

ADAMS, Judge.
Relying on the "Any Willing Provider" statute codified at OCGA § 33-20-16 (the "AWP statute"), Georgia's Commissioner of Insurance ruled that Blue Cross and Blue Shield of Georgia, Inc. ("Blue Cross") was required to admit "any willing provider" that wished to join its preferred provider arrangement, and that Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. ("BC Healthcare") was required to admit "any willing provider" that wished to join its health maintenance organization.[1] The superior court reversed the Commissioner. Northeast Georgia Cancer Care, LLC and the Commissioner then sought discretionary review of the superior court's order, and we granted the applications, leading to these companion appeals. Based upon the plain language and structure of the Insurance Code, and giving proper deference to the ruling of the Commissioner, we conclude that the Commissioner correctly concluded that the Insurance

---

[1] This is the second appearance of this case before us. See *Northeast Ga. Cancer Care v. Blue Cross & Blue Shield of Ga.,* 297 Ga. App. 28 (676 SE2d 428) (2009) ("*Northeast I*"). In *Northeast I,* we concluded that the parties' dispute over application of the AWP statute had to be submitted to the Commissioner for resolution in the first instance. See id. at 30-32 (1).

Code does not bar application of the AWP statute to Blue Cross's preferred provider arrangement. But he erred by applying the AWP statute to BC Healthcare's HMO network.

The record reflects certain undisputed facts. In 1985, two separate healthcare companies merged and created Appellee Blue Cross. Blue Cross was licensed by Georgia's Commissioner of Insurance as a nonprofit "health care corporation" governed by what is now Chapter 20 of the Insurance Code, Title 33. Among other things, Blue Cross, as authorized by Chapter 30 of the Insurance Code, offers a preferred provider network plan to its insureds, which it refers to as a "Preferred Provider Organization" or PPO. In 1985, Blue Cross created, organized, and capitalized a for-profit wholly owned subsidiary, Appellee BC Healthcare. BC Healthcare, which began operation in 1986, is separately licensed by the Commissioner to operate as a health maintenance organization ("HMO"). BC Healthcare offers an HMO network plan to its insureds.

In 1996, Blue Cross converted to a for-profit organization with the approval of the Commissioner. As a result of legislative amendments, Blue Cross continued to be licensed as a "health care corporation" governed by Chapter 20 of the Insurance Code. See OCGA §§ 33-20-3 (12) (B); 33-20-31; 33-20-34; Ga. L. 1995, p. 745. As part of the conversion process, Blue Cross became a wholly owned subsidiary of the newly formed Cerulean Companies, Inc. In December 1997, Blue Cross distributed to Cerulean its 100 percent ownership interest in BC Healthcare, making the latter corporation a wholly owned subsidiary of Cerulean and an affiliate of Blue Cross.

Appellant Northeast Georgia Cancer Care, LLC is a medical practice group consisting of medical and radiation oncologists. *Northeast I*, 297 Ga. App. at 29. From 2002 to 2007, Northeast was an approved health care provider in the PPO plan offered by Blue Cross and the HMO plan offered by BC Healthcare. Id. However, a dispute over payments and reimbursements arose between the parties, leading Northeast to terminate its provider contracts with Blue Cross and BC Healthcare in 2007. Id. The parties settled their dispute, and, as part of the settlement, they began negotiating new provider contracts. Id. Ultimately, Blue Cross allowed Northeast's individual physicians to participate as providers in its PPO network, but not Northeast as a group medical practice. BC Healthcare allowed Northeast's individual radiation oncologists to participate as providers in its HMO network, but not Northeast as a group medical practice or its individual medical oncologists. This remaining unresolved dispute between the parties over access to the PPO and HMO networks led to the instant litigation.

At the heart of the parties' dispute is Georgia's AWP statute, OCGA § 33-20-16, which provides:

> Every doctor of medicine, every doctor of dental surgery, every podiatrist, and every health care provider within a class approved by the health care corporation who is appropriately licensed to practice and who is reputable and in good standing shall have the right to become a participating physician or approved health care provider for medical or surgical care, or both, as the case may be, under such terms or conditions as are imposed on other participating physicians or approved health care providers within such approved class under similar circumstances in accordance with this chapter.

The parties disagree over whether the AWP statute applies to the PPO network offered by Blue Cross and to the HMO network offered by BC Healthcare.

Northeast filed suit in superior court against Blue Cross and BC Healthcare, seeking, among other things, a declaratory judgment as to its right to participate as a provider in the PPO network and the HMO network under the AWP statute. The superior court dismissed the declaratory judgment count and several of Northeast's other claims, ruling that the AWP statute was inapplicable. In the earlier appeal, we affirmed the superior court's order of dismissal, but in part on the alternative ground that Northeast had failed to exhaust its administrative remedies. See *Northeast I*, 297 Ga. App. at 30-31 (1). We held that Northeast was first required to submit its dispute over the application of the AWP statute to the Commissioner. See id.

Accordingly, Northeast filed a petition with the Commissioner. On December 17, 2009, in a procedural order, the Commissioner bifurcated the legal and factual issues. On January 27, 2010, the Commissioner ordered that there would be two hearings: the first on legal issues followed by an evidentiary hearing within 30 days thereafter; he ordered that no final ruling would be issued until the parties had an opportunity to present evidence. On February 18, 2010, after receiving submissions from the parties, the Commissioner held the first hearing; he expressly stated at the beginning of the hearing that he was not taking evidence. Later during the hearing, however, the Commissioner stated that he was going to consider the Department's file in order to address four factual

points.[2] On April 7, 2010, the Commissioner issued two rulings "on the legal issues presented to me by the parties." In the first, the Commissioner concluded the AWP statute applied to Blue Cross's PPO network; in the second, he concluded it applied to BC Healthcare's HMO network. The Commissioner expressly limited his ruling to the two Blue Cross entities. On April 19, 2010, upon request, the Commissioner issued an order clarifying that his rulings were effective as of April 7, 2010; that he would not stay the rulings pending an appeal; and that if no one appealed, he would schedule the contemplated evidentiary hearing by May 7, 2010. The Commissioner concluded with this: "If an appeal is timely filed, the evidentiary hearing shall be stayed in accordance with the provisions of § 5 (b) of the Procedural Order. The effectiveness of the rulings, however, will not be stayed." The intended purpose of the remaining hearing is unclear from the record.

Blue Cross and BC Healthcare appealed the Commissioner's two rulings to the superior court and moved for a stay of those rulings, which the superior court granted. The superior court later reversed both rulings based on the language and structure of the Insurance Code. Although the superior court's written order was composed of a single page, it incorporated by reference its lengthy oral ruling at a prior hearing. Northeast and the Commissioner sought discretionary review of the superior court's order, and we granted the applications.

### Case No. A11A1871

1. In several related enumerations of error, Northeast contends the superior court erred by failing to appropriately defer to the Commissioner's interpretation of the Insurance Code, including the AWP statute, and by concluding that the AWP statute did not apply in either situation.[3]

---

[2] The Commissioner indicated that he was going to accept "all documents in the ordinary course of business of the Department of Insurance." He stated that he intended to consider (1) how BC Healthcare was capitalized; (2) how Cerulean was capitalized; (3) how BC Healthcare was transferred from Blue Cross to Cerulean; and (4) what compensation, if any, did Blue Cross receive as a result of that transfer.

[3] In a separate enumeration of error, Northeast asserts that the superior court erred in holding that "a health plan insurer/HMO can walk away from promises it made in order to obtain special treatment under the Georgia insurance laws"; Northeast was referring to alleged promises made by Blue Cross during the hearings regarding its conversion from nonprofit to for-profit status. But Northeast does not address this enumeration in the argument section of its brief and thus has abandoned it. See Court of Appeals Rule 25 (a) (3) and (c) (2) (i).

A thorough discussion of the complete standard of review of a decision by an administrative agency has recently been set out by the Supreme Court:

> Judicial review of an administrative decision requires the court to determine that the findings of fact are supported by "any evidence" and to examine the soundness of the conclusions of law that are based upon the findings of fact. OCGA § 50-13-19 (h). As to the first step, OCGA § 50-13-19 (h) provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact [but] . . . [t]he court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings . . . are: . . . (5) [c]learly erroneous. . . ." "Thus, the statute prevents a de novo determination of the evidentiary questions leaving only a determination of whether the facts found by the [agency] are supported by 'any evidence.' " [Cit.]
>
> OCGA § 50-13-19 (h) also sets out the parameters of a court's review of the legal conclusions made in the agency decision. While the judiciary accepts the findings of fact if there is any evidence to support the findings, the court "may reverse or modify the [agency] decision if substantial rights of the appellant have been prejudiced because the administrative . . . decision[ ] . . . [is]: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law." OCGA § 50-13-19 (h).

*Pruitt Corp. v. Ga. Dept. of Community Health*, 284 Ga. 158, 160-161 (3) (664 SE2d 223) (2008).[4] In sum, "the court is statutorily required

---

[4] The full text of OCGA § 50-13-19 (h) is as follows:
The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

to examine the soundness of the conclusions of law drawn from the findings of fact supported by any evidence, and is authorized to reverse or modify the agency decision upon a determination that the agency's application of the law to the facts is erroneous." Id. In this case, our review will focus on the legal conclusions and the factual questions the Commissioner considered.

The Supreme Court also explained the proper amount of deference to be applied to the agency's interpretation of relevant statutes and rules and regulations:

> When an administrative agency decision is the subject of judicial review, judicial deference is to be afforded the agency's interpretation of statutes it is charged with enforcing or administering and the agency's interpretation of rules and regulations it has enacted to fulfill the function given it by the legislative branch. [Cits.]

*Pruitt Corp.*, 284 Ga. at 159 (2).

(a) *The Blue Cross Preferred Provider Arrangement, or PPO.* Following the hearing, the Commissioner held that the AWP statute applied to Blue Cross's PPO network. We agree that the plain and unambiguous language of the relevant statutes, when read together, comports with the Commissioner's decision.

"In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly[.]" (Citation and punctuation omitted.) *Moore v. Moore-McKinney*, 297 Ga. App. 703, 706 (1) (678 SE2d 152) (2009). "When the language of a statute is plain and unambiguous and not leading to an absurd result, it evidences the legislative intent which is not to be contravened." *Ga. Dept. of Transp. v. Evans*, 269 Ga. 400, 401 (499 SE2d 321) (1998). We also must endeavor "to give each part of the statute meaning and avoid constructions that make some language mere surplusage" or meaningless. (Citation omitted.) *J. Kinson Cook, Inc. v. Weaver*, 252 Ga. App. 868, 870 (1) (556 SE2d 831) (2001). See *Footstar, Inc. v. Liberty Mut. Ins. Co.*, 281 Ga. 448, 450 (637 SE2d 692) (2006). Furthermore,

> [a] statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes "in pari materia," are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto.

(Citations and punctuation omitted.) *City of Buchanan v. Pope*, 222 Ga. App. 716, 717 (1) (476 SE2d 53) (1996). Finally, OCGA § 33-1-5 provides:

> Provisions of this title relating to a particular kind of insurance or to a particular type of insurer or to a particular matter prevail over provisions relating to insurance in general or to insurers in general.

As noted by the Commissioner, Blue Cross admits that it "is and since its founding has been licensed by the Department [of Insurance] as a 'health care corporation' under Chapter 20 of the Insurance Code." Our plain reading of the relevant statutes shows the following: The AWP statute is a part of Chapter 20 of the Insurance Code, and it expressly applies to health care corporations. OCGA § 33-20-16. Health care corporations are authorized to administer one or more "health care plans." OCGA §§ 33-20-3 (2); 33-20-4; 33-20-5. A health care plan is defined as "a plan or *arrangement* under which health care services are or may be rendered . . . at the expense of a health care corporation in consideration of periodical payments. . . ." (Emphasis supplied.) OCGA § 33-20-3 (3). It follows that under the plain wording of Chapter 20, the AWP statute applies to Blue Cross and its health care plans. The next question is whether the PPO operated by Blue Cross constitutes one of those plans or something separate that is not governed by the AWP statute.

Chapter 20 health care plans, along with several other types of "insurers" established by the Insurance Code, are specifically defined as authorized "health care insurer[s]" under the Preferred Provider Arrangements Act (PPA Act) found in Chapter 30, Article 2. OCGA § 33-30-22 (3).[5] Under that act, any specified health care insurer is authorized to enter into preferred provider "arrangements," OCGA § 33-30-23 (a), which are simply defined as contracts with providers:

> "Preferred provider arrangement" means a contract between or on behalf of the health care insurer and a preferred

---

[5] Although referring to a health care plan as an insurer sounds odd, the term is equated with an insurer or issuer of insurance policies quite frequently in the Insurance Code. For example, Chapter 1 of the Code defines "insurer" and adds that "Hospital service nonprofit corporations, nonprofit medical service corporations, burial associations, *health care plans*, and health maintenance organizations are insurers within the meaning of this title." (Emphasis supplied.) OCGA § 33-1-2 (4). See also OCGA §§ 33-9-3 (b) (2); 33-20B-2 (4); 33-24-21.1 (a) (6); 33-24-21.2 (a) (3); 33-24-28.1 (d); 33-24-28.2 (d); 33-24-28.3; 33-24-29 (e) (1); 33-24-29.1 (e) (1); 33-29-3.1 (c); 33-29-3.2 (e); 33-29-3.3 (c); 33-30-4.1 (c); 33-30-4.2 (e); 33-30-4.3 (a), and others.

provider which complies with all the requirements of this article.

OCGA § 33-30-22 (7). Likewise, a "preferred provider" is simply a "provider or group of providers who have contracted to provide specified covered services." OCGA § 33-30-22 (6). Finally, a "health benefit plan" under the PPA Act is the "policy or subscriber agreement between the . . . policyholder and the health care insurer. . . ." OCGA § 33-30-22 (2). Thus, under the PPA Act, health care insurers, including health care plans operated by health care corporations governed by Chapter 20, can enter into preferred provider arrangements with providers and enter into health benefit plans, i.e., policies or subscriber agreements, with people desiring that type of plan. It necessarily follows that Blue Cross, a health care corporation, is authorized to administer a health care plan that is in fact a preferred provider arrangement, and that the relationship with covered persons is the associated "health benefit plan."[6]

Next, there is nothing in Chapter 20 to suggest that its provisions, including the AWP statute, do not apply to preferred provider arrangements operated by Chapter 20 health care corporations. We also defer to the Commissioner's interpretation of the AWP statute: that the language employed therein is consistent with managed care plans, such as Blue Cross's PPO. In the words of the Commissioner:

> [T]he [AWP] statute references "participating provider" and "classes approved," which are terms and concepts that are at the heart of a managed care plan, such as those described in OCGA §[ ] 33-30-20 et seq. This is no coincidence. [Blue Cross], as an HCC, has long had the express authority to create different classes of providers and different payment levels for participating and nonparticipating facilities. See OCGA § 33-20-13.

---

[6] To be more clear, the PPA Act neither defines nor establishes something called a "preferred provider organization." The term is not even used in the PPA Act. In other words, the PPA Act does not establish an entity, i.e., an insurer, that must be licensed and regulated by the Insurance Commissioner. See OCGA § 33-8-1. Compare OCGA §§ 33-20-8 (health care plans); 33-21-2 (health maintenance organizations). Rather, it is an "arrangement" with certain providers or a "plan" for the covered persons that a "health care insurer," such as a health care plan administered by a Chapter 20 health care corporation, may provide. The term preferred provider organization is used elsewhere in the Insurance Code, but nowhere does the Insurance Code define the term, although it is frequently used to describe one of the kinds of insurers subject to a provision of the Code. See, e.g., OCGA §§ 33-9-3 (b) (1), (2); 33-20A-9.1 (d) (2) (C); 33-24-56.1 (a) (1); 33-24-56.2 (a) (3); 33-24-56.4 (b) (2); 33-24-57.1 (a) (2); 33-24-58.2 (a) (2); 33-24-59.3 (a); 33-24-59.6 (b) (1); 33-24-59.7 (c) (1) (A); 33-24-59.9 (c) (1); 33-24-59.12 (b) (5); 33-24-59.15 (a) (3); 33-24-72 (a) (2); 33-30A-5 (3); 33-43-1 (6.1) (A); 33-46-2 (8).

Moreover, the PPA Act provides, without express caveat, that Chapter 30, Article 2 health care insurers must comply with all other applicable provisions of the Insurance Code:

> Health care insurers as defined in this article shall be subject to and shall be required to comply with all other applicable provisions of this title and rules and regulations promulgated pursuant to this title.

OCGA § 33-30-26.[7] The plain and unambiguous meaning of this Code section when read with Chapter 20 allows that the AWP statute applies to Chapter 20 health care corporations, including their preferred provider arrangements. This conclusion would obviously encompass Blue Cross and its preferred provider arrangement, i.e., its PPO.

What remains is the idea that application of the AWP statute to preferred provider arrangements is fundamentally inconsistent with the nature of such arrangements as defined in the PPA Act. Specifically, the appellees argue that OCGA § 33-30-25 reveals that inconsistency. But that Code section, which expressly permits insurers operating preferred provider arrangements to place reasonable limits on the number or classes of preferred providers, plainly and unambiguously provides that insurers may do so *only upon approval of the Insurance Commissioner*:

> Subject to the approval of the Commissioner under such procedures as he may develop, health care insurers may place reasonable limits on the number or classes of preferred providers which satisfy the standards set forth by the health care insurer, provided that there be no discrimination against providers on the basis of religion, race, color, national origin, age, sex, or marital or corporate status, and provided, further, that all health care providers within any defined service area who are licensed and qualified to render the services covered by the preferred provider arrangement and who satisfy the standards set forth by the health care insurer shall be given the opportunity to apply and to become a preferred provider.

---

[7] The lack of express caveats in this Insurance Code section stands in contrast to OCGA § 33-21-28 (a), a similar incorporation statute found in Chapter 21 applicable to health maintenance organizations, in which there are two caveats, as emphasized infra.

OCGA § 33-30-25. This provision can be construed in a manner consistent and harmonious with the AWP statute, as we are duty-bound to do. *Ramos-Silva v. State Farm Mut. Ins. Co.*, 300 Ga. App. 699, 702 (686 SE2d 345) (2009). Health care insurers who are Chapter 20 health care plans/corporations administering preferred provider arrangements are subject to the AWP statute unless and until they take advantage of the terms of OCGA § 33-30-25 by seeking the approval of the Insurance Commissioner for reasonable limits on the number or classes of proffered providers. Under any such approved limitations, the final portion of OCGA § 33-30-25 kicks in: even though the Insurance Commissioner has approved a limitation on the number of providers, all health care providers meeting the statutorily defined criteria "shall be given the opportunity to apply and to become a preferred provider," and they cannot be discriminated against for the specified improper reasons.

Although Blue Cross strongly argues that an insurer cannot operate a PPO without limiting the number or classes of preferred providers, the plain language of Chapter 30 actually allows an insurer to do just that. Nothing in the PPA Act requires an insurer to implement such limits. And it would appear that an insurer could begin by offering a plan without such limits and later decide to seek the Commissioner's approval for reasonable limitations pursuant to OCGA § 33-30-25; or it could seek the Commissioner's approval of a plan with such limitations when it seeks initial approval of a preferred provider arrangement. Here, it is not clear from the record how Blue Cross operates its PPO in this regard, nor whether, prior to the events that precipitated this litigation, it ever prohibited a provider from joining its network.

In conclusion, we agree with the Insurance Commissioner's interpretation of the relevant statutes and his conclusion that Blue Cross, as a Chapter 20 health care corporation operating a health care plan that is, in fact, a preferred provider arrangement authorized by Chapter 30, Article 2, must seek approval of limits on the number or classes of preferred providers under procedures developed by the Insurance Commissioner in order to deviate from the requirements of the AWP statute. Therefore, we reverse the superior court and uphold the Commissioner's ruling that there is nothing in the statutory scheme prohibiting application of the AWP statute to the PPO plan offered by Blue Cross.

(b) *The HMO Network Offered By BC Healthcare.* The Commissioner determined the AWP statute applied to the HMO network

offered by BC Healthcare even though BC Healthcare is not a Chapter 20 health care corporation. First, the Commissioner reasoned that pursuant to OCGA § 33-21-28 (a), any provision in Title 33 that did not conflict with the provisions of Chapter 21 applied to HMOs; and he found no such conflict. Second, the Commissioner concluded that because BC Healthcare was organized and capitalized by Blue Cross, it was subject to the same statutes as Blue Cross itself, including the AWP statute, regardless of whether it was a separate for-profit entity. Third, the Commissioner viewed this Court's prior decision in *Northeast I* as ultimately controlling its decision to apply the AWP statute to the HMO network. We find aspects of the Commissioner's analysis to be legally flawed.

(i) HMOs are governed principally by Chapter 21 of the Insurance Code. See OCGA § 33-21-1 et seq. An important distinction with the above analysis regarding preferred provider arrangements is that, by an express provision of Chapter 21, other provisions of the Insurance Code, such as the AWP statute, are applicable to HMOs only "[e]xcept as otherwise provided by law" and only if they are "not in conflict with [Chapter 21]":

> Except as otherwise provided by law, all provisions of this title which are not in conflict with this chapter shall apply to health maintenance organizations and all other persons subject to this chapter, and specifically, the requirements and restrictions of Code Sections 33-20A-6, 33-20A-7, 33-20A-8, and 33-20A-9.1 shall apply to health maintenance organizations and all other persons subject to this chapter.

OCGA § 33-21-28 (a).[8] As pointed out above, the similar provision of the PPA Act, OCGA § 33-30-26, contains no such caveat.[9]

A plain reading of the relevant statutes shows that application of the AWP statute to the HMO network offered by BC Healthcare is otherwise prohibited by law because the AWP statute is inapplicable to for-profit corporations, such as BC Healthcare,[10] that are not statutorily defined "surviving corporations." Specifically, the AWP

---

[8] OCGA §§ 33-20A-6; 33-20A-7; 33-20A-8; and 33-20A-9.1 are part of the Patient Protection Act of 1996, OCGA § 33-20A-1 et seq.

[9] Another important distinction is that HMOs and health care corporations are entities that require certificates of authority from the Insurance Commissioner. See OCGA §§ 33-8-1 (1) (I.1), (J); 33-20-8; 33-21-2. Preferred provider arrangements are simply contractual arrangements that many types of insurers may offer.

[10] It is undisputed that BC Healthcare is and always has been a for-profit corporation.

statute provides that application of its provisions must be "in accordance with this chapter," i.e., Chapter 20 of the Insurance Code. See OCGA § 33-20-16. Chapter 20 expressly states that its provisions "shall not apply to nor govern any corporation which is organized for profit or which contemplates any pecuniary gain to its shareholders or members," unless the corporation is a "surviving corporation." OCGA § 33-20-31. Because BC Healthcare has always been a for-profit entity, we turn to the definition of "surviving corporation":

> "Surviving corporation" means a *health care corporation which is*:
> (A) The surviving corporation in a merger which includes one or more health care corporations;
> (B) A health care corporation which has amended its articles of incorporation to become a corporation governed by Chapter 2 of Title 14, the "Georgia Business Corporation Code"; or
> (C) The subsidiary of a corporation described in subparagraph (A) or (B) of this paragraph.

(Emphasis supplied.) OCGA § 33-20-3 (12).[11] Thus, the plain language shows that to qualify as a "surviving corporation," a corporation must first be a "health care corporation"; then it must also satisfy one of the three conditions set forth in subsections (A)-(C).

A "health care corporation" is defined as "a corporation established in accordance with the provisions of [Chapter 20] to administer one or more health care plans." OCGA § 33-20-3 (2). It is undisputed that BC Healthcare is not and has never been a Chapter 20 health care corporation; it is a for-profit entity licensed as a health maintenance organization. Accordingly, BC Healthcare is not a surviving corporation, and the plain language of OCGA § 33-21-28 (a) bars the application of the AWP statute to the HMO network offered by BC Healthcare because it is otherwise prohibited by law. Even if we were to read out of the definition the requirement that a surviving corporation must be a health care corporation, the argument that BC

---

[11] Northeast asserts that the legislature enacted the "surviving corporation" provision and other amendments to Chapter 20 of the Insurance Code as a result of lobbying by Blue Cross conducted as part of its efforts to convert to a for-profit corporation in the 1990s; and it attempts to use this fact to alter the construction of the statute. But "[w]here the language of a statute is clear and does not lead to absurd or impracticable consequences, its legislative history may not be used to support a construction that adds to or takes from the significance of the words employed." (Citation and punctuation omitted.) *Standard Oil Co. of Kentucky v. State Revenue Comm.*, 179 Ga. 371, 377 (176 SE 1) (1934).

Healthcare is a "surviving corporation" under subsection (C) of the definition also fails because BC Healthcare is no longer a subsidiary of Blue Cross.

Because the meaning of the statute is clear, the Insurance Commissioner's conclusion that the AWP statute applies to BC Healthcare was clearly erroneous.

(ii) Perhaps to get around this problem, the Commissioner concluded that because BC Healthcare was created, organized and capitalized by Blue Cross, which he found as a matter of fact,[12] it was and is subject to the same statutes as Blue Cross itself, including the AWP statute. But the Commissioner offered no legal basis for this conclusion other than citing provisions of Chapters 20 and 21 of the Insurance Code that do not directly answer the question, and therefore we owe no deference to that determination. Similarly, Northeast argues that the simple fact that a health care corporation subject to the AWP statute may operate an HMO through an affiliate[13] (like, as it alleges, Blue Cross operates BC Healthcare), means that the affiliate is subject to the AWP statute, as well. But, we agree with the superior court that nothing in Chapter 21 provides a legal basis for ignoring the separate legal identities of Blue Cross and BC Healthcare for the purpose of applying OCGA § 33-21-28 (a).[14] In sum, whether and to what extent the AWP statute applies to BC Healthcare is specifically answered by OCGA § 33-21-28 (a).

(iii) Finally, the Commissioner erred by concluding that our decision in *Northeast I* controls the question of whether the AWP statute applies to BC Healthcare. In *Northeast I*, we did not purport to address the underlying substantive merits of the action; rather, we simply concluded that, pursuant to OCGA § 33-20-30 — the administrative exhaustion provision[15] — Northeast was required to exhaust

---

[12] See note 2, supra.

[13] OCGA § 33-21-25 provides:

Notwithstanding any other law which may be inconsistent with this Code section, an insurer, a hospital service nonprofit corporation, a nonprofit medical service corporation, or a health care corporation licensed in this state may directly or through a subsidiary or affiliate organize and operate a health maintenance organization.

[14] Northeast does not rely upon any common law principles for ignoring the separate legal identities of Blue Cross and BC Healthcare, such as an alter ego or piercing the corporate veil theory of liability.

[15] OCGA § 33-20-30 provides:

Any dispute arising within the purview of this chapter with reference to the regulation and supervision of any health care corporation shall within 30 days after such dispute arises be submitted by the aggrieved person to the Commissioner for his decision with reference thereto, provided nothing in this Code section shall authorize or require the Commissioner to determine the contractual rights between

its administrative remedies by first submitting its dispute with Blue Cross and BC Healthcare to the Commissioner. *Northeast I*, 297 Ga. App. at 30-32 (1).

The Commissioner appears to have concluded that in *Northeast I* this Court implicitly determined that BC Healthcare was a "surviving corporation" under OCGA § 33-20-31 because otherwise OCGA § 33-21-28 (a) would have barred application of OCGA § 33-20-30 in this case. But *Northeast I* did not discuss OCGA § 33-20-31 or "surviving corporations," and "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (Citations and punctuation omitted.) *Jackson v. City of College Park*, 230 Ga. App. 487, 490 (1) (496 SE2d 777) (1998).

Furthermore, OCGA § 33-20-30, unlike the substantive provisions of Chapter 20 such as the AWP statute, is merely a jurisdictional provision addressing how to handle disputes that arise over the statutory framework imposed by Chapter 20, including whether the disputes fall into that framework. It follows that the Commissioner erred in assuming that OCGA § 33-20-30 had any bearing on the application of OCGA § 33-20-31 to the parties' dispute in this case.

For the reasons set forth above, the Commissioner correctly concluded that the Insurance Code does not bar application of the AWP statute to Blue Cross's PPO plan. But it erred by applying the AWP statute to BC Healthcare's HMO network. We therefore affirm in part and reverse in part the decision of the superior court and remand this case to that court with instruction to remand the case to the Insurance Commissioner for further proceedings, if necessary, consistent with this opinion.

## Case No. A11A1872

2. In this companion appeal, the Commissioner likewise argues that the superior court erred by failing to appropriately defer to his interpretation of the Insurance Code and by concluding that the AWP statute did not apply to the relevant PPO or HMO network. The Commissioner raises the same essential arguments as Northeast. For the reasons set forth in Case No. A11A1871, we agree the Commissioner correctly concluded that the Insurance Code does not bar application of the AWP statute to Blue Cross's PPO plan. But it

---

the parties interested in any such corporations. After proper notice and hearing, any decisions and order of the Commissioner made pursuant to this chapter shall be binding on the persons involved unless set aside on review as provided by this Code section.

erred by applying the AWP statute to BC Healthcare's HMO network. We therefore affirm in part and reverse in part the decision of the superior court and remand this case to that court with instruction to remand the case to the Insurance Commissioner for further proceedings, if necessary, consistent with this opinion.

*Judgments affirmed in part and reversed in part, and cases remanded with direction. Ellington, C. J., Doyle, P. J., and Blackwell, J., concur. Barnes, P. J., Phipps, P. J., and Miller, J., concur in part and dissent in part.*

BARNES, Presiding Judge, concurring in part and dissenting in part.

The majority reverses the superior court in part and holds that Blue Cross and Blue Shield of Georgia, Inc. must admit "any willing provider" into its health plan utilizing a preferred provider arrangement ("PPO plan"). But OCGA § 33-30-25 of the Preferred Provider Arrangements Act clearly permits health care insurers like Blue Cross to place reasonable limits on the number or classes of their preferred providers. Furthermore, Georgia's Commissioner of Insurance has exercised his discretion and chosen not to require health care insurers to seek and obtain preapproval of the limits they wish to impose on the number or classes of their preferred providers. Under these circumstances, Georgia's Any Willing Provider ("AWP") statute is inapplicable to the PPO plan offered by Blue Cross, as the superior court properly concluded. Because the superior court should be affirmed on the PPO issue, I respectfully dissent in part to the majority's decision in these companion appeals.[16]

> While reviewing courts defer to agency interpretations of the statutes they are charged with administering, that deference applies only as far as the agency interpretation is consistent with the statute. Administrative agencies may not change a statute by interpretation, or establish different standards within a statute that are not established by a legislative body. . . . The judicial branch determines independently whether the agency's interpretation correctly reflects the plain language of the statute and comports with the legislative intent.

---

[16] Specifically, I dissent to Division 1 (a) and to Division 2 to the extent that the majority holds that the AWP statute applies to Blue Cross's PPO plan. I concur fully in Division 1 (b) and to Division 2 to the extent that the majority holds that the AWP statute is inapplicable to the health maintenance organization operated by Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.

(Citations and punctuation omitted.) *Palmyra Park Hosp. v. Phoebe Sumter Med. Center*, 310 Ga. App. 487, 491 (1) (714 SE2d 71) (2011). See OCGA § 33-2-28 (c); *Handel v. Powell*, 284 Ga. 550, 553 (670 SE2d 62) (2008).

When interpreting a statute, this court must "apply the fundamental rules of statutory construction that require us to construe the statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage." (Punctuation and footnote omitted.) *Ga. Transmission Corp. v. Worley*, 312 Ga. App. 855, 856 (720 SE2d 305) (2011). Moreover, when two statutes conflict, "later statutes prevail over earlier statutes, and specific statutes govern over more general statutes." (Citations omitted.) *Glinton v. And R, Inc.*, 271 Ga. 864, 866-867 (524 SE2d 481) (1999). In the context of conflicts within the Insurance Code, "[p]rovisions . . . relating to a particular kind of insurance or to a particular type of insurer or to a particular matter prevail over provisions relating to insurance in general or to insurers in general." OCGA § 33-1-5.

At the center of the parties' dispute over statutory interpretation is the AWP statute, OCGA § 33-20-16, which provides:

> Every doctor of medicine, every doctor of dental surgery, every podiatrist, and every health care provider within a class approved by the health care corporation who is appropriately licensed to practice and who is reputable and in good standing shall have the right to become a participating physician or approved health care provider for medical or surgical care, or both, as the case may be, under such terms or conditions as are imposed on other participating physicians or approved health care providers within such approved class under similar circumstances in accordance with this chapter.

The parties disagree over whether the AWP statute applies to Blue Cross's PPO plan. The superior court was correct in concluding that the AWP statute does not apply.

Under Georgia law, PPO plans are governed principally by the Preferred Provider Arrangements Act, OCGA § 33-30-20 et seq. (the "Preferred Provider Act"). When enacting the Preferred Provider Act, the General Assembly announced its intent "to encourage health care cost containment while preserving quality of care by allowing health care insurers to enter into preferred provider arrangements." OCGA § 33-30-21. In other words, the General Assembly expressed its intention that health care insurers be allowed to contract with their

"preferred" providers to offer specified covered services, rather than be forced to admit "every" qualified provider, as would be required under the AWP statute.

The intent of the General Assembly is further spelled out in OCGA § 33-30-25, entitled "Reasonable limits on number or classes of preferred providers," which states:

> Subject to the approval of the Commissioner under such procedures as he may develop, health care insurers may place reasonable limits on the number or classes of preferred providers which satisfy the standards set forth by the health care insurer, provided that there be no discrimination against providers on the basis of religion, race, color, national origin, age, sex, or marital or corporate status, and provided, further, that all health care providers within any defined service area who are licensed and qualified to render the services covered by the preferred provider arrangement and who satisfy the standards set forth by the health care insurer shall be given the opportunity to apply and to become a preferred provider.

There is a clear conflict between the AWP statute and OCGA § 33-30-25: the AWP statute requires the admission of "every" qualified provider, while OCGA § 33-30-25 permits health care insurers offering PPO plans to impose reasonable limits on the number or classes of their preferred providers. Furthermore, the AWP statute affords qualified providers with the "right" to participate, while OCGA § 33-30-25 affords only an "opportunity" to participate in a PPO plan. In sum, the express authority given to health care insurers in OCGA § 33-30-25 to limit the number or classes of providers participating in their PPO plans cannot be reconciled with the notion that "any willing provider" has a right to participate.

In light of this clear conflict between the AWP statute and OCGA § 33-30-25, the terms of OCGA § 33-30-25 must take precedence in the context of preferred provider arrangements. First, given that OCGA § 33-30-25 is the more specific statute addressing restrictions that can be placed on the number or classes of preferred providers in PPO plans, its terms must prevail over those of the more general AWP statute. See OCGA § 33-1-5; *Glinton*, 271 Ga. at 867. Second, given the conflict between the two statutes, the terms of the later statute, OCGA § 33-30-25, see Ga. L. 1988, p. 1483, § 1, must prevail over the terms of the earlier AWP statute. See Ga. L. 1976, p. 1461, § 1; *Glinton*, 271 Ga. at 866-867.

The majority, however, concludes that there are circumstances under which the AWP statute, rather than OCGA § 33-30-25, should be applied to PPO plans offered by Chapter 20 health care corporations. In reaching this conclusion, the majority relies upon the initial phrase of OCGA § 33-30-25 — "Subject to the approval of the Commissioner under such procedures as he may develop" — to argue that an insurer cannot limit the number or classes of its preferred providers until it first seeks and obtains the Commissioner's preapproval. The majority then reasons that the AWP statute applies to a PPO plan offered by a Chapter 20 health care corporation (such as Blue Cross) unless the health care corporation obtains preapproval from the Commissioner to place a limit on the number or classes of its preferred providers pursuant to OCGA § 33-30-25. In other words, in the majority's view, the AWP statute serves as the default statutory framework for a PPO plan offered by a Chapter 20 health care corporation unless and until the Commissioner gives his preapproval to the specific limitations the corporation seeks to impose under OCGA § 33-30-25.

I disagree with the majority because OCGA § 33-30-25 requires health care insurers to seek and obtain preapproval from the Commissioner for the specific limitations they wish to impose on their preferred provider arrangements only if the Commissioner exercises his discretion and decides that preapproval is necessary. The initial phrase of OCGA § 33-30-25 states that the reasonable limits placed by health care insurers on the number or classes of their preferred providers are "[s]ubject to the approval of the Commissioner under such procedures as he *may* develop." (Emphasis supplied.) OCGA § 33-30-25. The word "may" is a term of permissiveness, which authorizes the Commissioner in his discretion to develop preapproval procedures but does not require him to do so. See generally *McCorquodale v. State*, 233 Ga. 369, 374 (3) (211 SE2d 577) (1974). Hence, the Commissioner is afforded discretion in deciding whether agency preapproval of the specific limitations placed by health care insurers on the number or classes of their preferred providers should be required.

It is undisputed that the Commissioner has not promulgated administrative procedures, pursuant to OCGA § 33-30-25, requiring health care insurers to seek and obtain preapproval of the specific limitations they wish to place on the number or classes of their preferred providers. The Commissioner, therefore, has exercised his discretion and chosen not to require preapproval. Accordingly, health care insurers are not required to seek and obtain preapproval from the Commissioner because the Commissioner has chosen not to require it as a precondition to an insurer imposing specific limitations

on the number or classes of its preferred providers. Hence, the majority's argument that Chapter 20 health care corporations like Blue Cross must seek and obtain the preapproval of the Commissioner to avoid application of the AWP statute to their preferred provider arrangements is misplaced.

In sum, the AWP statute directly conflicts with OCGA § 33-30-25, which permits Chapter 20 health care corporations and other health care insurers to impose reasonable limits on the number or classes of their preferred providers rather than "any willing provider." And while OCGA § 33-30-25 affords the Commissioner the discretion to require preapproval of those limits, the Commissioner has chosen not to require preapproval. Consequently, the superior court properly concluded that the AWP statute did not apply to the PPO plan offered by Blue Cross. Because the majority arrives at the opposite conclusion, I respectfully dissent.

I am authorized to state that Presiding Judge Phipps and Judge Miller join in this dissent.

DECIDED MARCH 28, 2012 —
RECONSIDERATION DENIED APRIL 12, 2012 — ▮▮▮▮▮▮▮▮▮▮

*King & Spalding, James W. Boswell III, Jessica M. Eames, Chilton D. Varner,* for appellant (case no. A11A1871).

*Samuel S. Olens, Attorney General, Amy M. Burns, Assistant Attorney General,* for appellant (case no. A11A1872).

*McKenna, Long & Aldridge, James A. Washburn, Jeffrey R. Baxter, Weissman, Nowack, Curry & Wilco, Ned Blumenthal, Nelson, Mullins, Riley & Scarborough, Jeffrey L. Mapen,* for appellees.

*Lawson & Moseley, Matthew I. Dowling, Holland & Knight, Robert S. Highsmith, Elizabeth C. Whitworth,* amici curiae.