**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN , JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 13, 2013**

# In the Court of Appeals of Georgia

A12A2048. EQUIPCO INTERNATIONAL, LLC v. CERTAIN
 UNDERWRITERS AT LLOYD'S, LONDON.

McFADDEN, Judge.

This appeal concerns whether OCGA § 33-4-7 – which imposes upon the issuer

of a motor vehicle liability insurance policy affirmative duties related to adjusting,

investigating and settling certain losses – applies to the issuer of a cargo liability

insurance policy. The trial court held that it did not, and accordingly it granted

summary judgment to Certain Underwriters at Lloyd's, London ("Underwriters") in

a bad faith claim asserted under OCGA § 33-4-7 by Equipco International, LLC

("Equipco"). We agree with the trial court that the cargo liability insurance policy is

not a "motor vehicle liability insurance policy" under OCGA § 33-4-7. Consequently,

we affirm the grant of summary judgment to Underwriters. For this reason, we need

not address Equipco's claim that it was entitled to partial summary judgment on another ground.

1. *Facts and procedural posture.*

"On appeal from a grant of summary judgment, we conduct a de novo review of the evidence to determine whether there are any genuine issues of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation omitted.) *Inagawa v. Fayette County*, 291 Ga. 715 (732 SE2d 421) (2012).

The following facts are not in dispute. Underwriters issued a policy to Steady Rockin Transport, Inc., a motor common carrier. The policy provided coverage for Steady Rockin's "legal liability for cargo 'in transit.'" It stated, in pertinent part:

> Coverage is provided for your legal liability for property of others as a common or contract "carrier" under tariff documents, bills of lading, or shipping receipts issued by you. We will pay for "loss" to Covered Property from any of the Covered Causes of Loss, for which you are legally obligated to pay, up to our limit of liability for this coverage. . . . Covered Property . . . means lawful goods or merchandise, the property of others as described in tariff documents, bills of lading, or shipping receipts issued by you, while in your custody and control.

The policy defined a "carrier" to mean "contract or public truckmen, motor transportation companies, and any connecting public truckmen or motor transportation company of the above." It defined "covered causes of loss" to mean "risks of direct physical 'loss' to Covered Property except those causes of 'loss' listed in the Exclusions." (Emphasis omitted.) And it defined "in transit" as follows:

> Covered Property shipped via a "carrier" shall be considered "in transit" from the time the goods are in the exclusive custody and control of the "carrier" and continuously until the transporting vehicle arrives at the destination premises and are transferred to the exclusive custody and control of the consignee, warehousemen, or receiver.

Equipco hired Steady Rockin to transport an industrial forklift owned by Equipco. The forklift was damaged when Steady Rockin's driver collided with an overpass. Underwriters denied Steady Rockin's claim under the policy for the damage to the forklift and notified Steady Rockin that it was rescinding the policy on the ground that Steady Rockin had made material misrepresentations to Underwriters.

Equipco brought an action for damages to the forklift against Steady Rockin and its driver and purported to include Underwriters as "unnamed parties" in a bad faith claim under OCGA § 33-4-7. It obtained a default judgment against Steady

3

Rockin. Underwriters then moved to dismiss the bad faith claim, and Equipco moved for partial summary judgment against Underwriters on the issue of whether Underwriters could rescind the policy. In the order on appeal, the trial court noted the parties' agreement to treat Underwriters' motion as one for summary judgment. The trial court granted that motion and, accordingly, did not address Equipco's cross-motion for partial summary judgment.

2. *Underwriters' motion for summary judgment.*

Equipco argues that the trial court erred in granting summary judgment to Underwriters on Equipco's claim that it was entitled to recovery under OCGA § 33-4-7 because Underwriters acted in bad faith regarding Steady Rockin's claim under the policy. Generally, "[b]ad faith claims under the Georgia insurance code . . . are available only as between insureds and their insurers." (Citation and punctuation omitted.) *J. Smith Lanier & Co. v. Southeastern Forge*, 280 Ga. 508, 510 (630 SE2d 404) (2006). But OCGA § 33-4-7 allows third parties to bring bad faith claims directly against insurers in certain limited circumstances. OCGA § 33-4-7 pertinently provides that,

> [i]n the event of a loss because of injury to or destruction of property covered by a *motor vehicle liability insurance policy*, the insurer issuing

4

such policy has an affirmative duty to adjust that loss fairly and promptly, to make a reasonable effort to investigate and evaluate the claim, and, where liability is reasonably clear, to make a good faith effort to settle with the claimant potentially entitled to recover against the insured under such policy.

(Emphasis supplied.) OCGA § 33-4-7 (a). It imposes a penalty upon an insurer who breaches this duty, and it allows a third party claimant, as well as an insured, to seek to recover the penalty against the insurer. OCGA § 33-4-7. See generally Kathryn H. Wade, *Actions Against Insurance Companies: Change Provisions Relating to an Insurer's Liability for Bad Faith Refusal to Pay for Loss Covered by Insurance; Provide for Insurer's Duties with Respect to Settlement of Motor Vehicle Liability Policy Claims; Provide for a Private Cause of Action for Unfair Claims Settlement Practices in Certain Circumstances*, 18 Ga. St. U. L. Rev. 167, 170 (2001) (describing enactment of OCGA § 33-4-7, "which provides a procedure for recovery in a third party motor vehicle property damage claim where the insurer engages in bad faith settlement practices") (citations omitted).

Equipco's ability to bring a bad faith claim against Underwriters under OCGA § 33-4-7 turns on whether the term "motor vehicle liability insurance policy," as used in that Code section, encompasses the cargo liability policy at issue here. In

considering this question, "we apply the fundamental rules of statutory construction that require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. At the same time, we must seek to effectuate the intent of the legislature." (Citations omitted.) *Slakman v. Continental Cas. Co.*, 277 Ga. 189, 191 (587 SE2d 24) (2003).

Equipco contends that the ordinary and everyday meaning of the term "motor vehicle liability insurance policy" includes the cargo liability policy because the policy covered liability for damage to cargo carried by a motor vehicle. But, by its terms, the cargo liability policy covered more than simply Steady Rockin's liability for damage to the cargo while the cargo was being carried by a motor vehicle. The policy also covered Steady Rockin's liability for damage to cargo occurring at *any* time after Steady Rockin obtained exclusive custody and control of the cargo and before it transferred the cargo to the exclusive custody and control of another. We are not persuaded that the plain language of the term "motor vehicle liability insurance policy" encompasses a policy that covers liability for damage that occurs to cargo in a motor common carrier's exclusive custody and control, even if the cargo is not in the process of being carried by a motor vehicle when the damage occurs.

6

In addition, although OCGA § 33-4-7 does not define the term "motor vehicle liability insurance policy," the use of that term elsewhere within the insurance code indicates that it does not encompass a cargo liability policy such as the policy at issue here. OCGA § 33-34-3 (a) (1) provides that "[a]ll policies of motor vehicle liability insurance issued in this state must be in accordance with the requirements of this chapter," and proceeds to set forth various requirements pertaining to, among other things, the minimum liability coverage required in all motor vehicle liability insurance policies. It is undisputed that the policy in this case did not meet those requirements. Equipco argues, however, that the requirements for a motor vehicle liability insurance policy set forth in Chapter 34 are "not instructive" to the determination of whether a policy is a motor vehicle liability insurance policy under OCGA § 33-4-7. We disagree.

"In construing any section of the Code, we must treat it as a single statute forming one homogenous and consistent body of laws, and each Code section is to be considered in explaining and elucidating every other part of the common system to which it belongs." (Citation and punctuation omitted.) *Ga. Mut. Ins. Co. v. Gardner*, 205 Ga. App. 458, 460 (422 SE2d 324) (1992). See also *State of Ga. v. Davis*, 246 Ga. 761, 761-762 (1) (272 SE2d 721) (1980) (the meaning and effect of

7

statutes will be determined with reference to other statutes); *Allison v. Domain*, 158 Ga. App. 542, 544 (281 SE2d 299) (1981) ("A statute must be construed with reference to the whole system of which it is a part.") (citation and punctuation omitted). "[A]ll statutes relating to the same subject-matter, briefly called statutes 'in pari materia,' are construed together, and harmonized wherever possible, so as to ascertain the legislative indendment and give effect thereto." (Citation omitted.) *Northeast Ga. Cancer Care v. Blue Cross & Blue Shield of Ga.*, 315 Ga. App. 521, 526 (1) (a) (726 SE2d 714) (2012). We have applied this rule of statutory construction to construe together Code sections from two different chapters within the insurance code. See id. at 530 (1) (a).

When the legislature enacted OCGA § 33-4-7 in 2001, a statute was already in place that imposed certain coverage requirements upon "[a]ll policies of motor vehicle liability insurance issued in this state." OCGA § 33-34-3 (a) (1). "We presume the General Assembly employed the language it used in [OCGA § 33-4-7] with full knowledge of the existing condition of the law. . . . " *Retention Alternatives v. Hayward*, 285 Ga. 437, 441 (2) (678 SE2d 877) (2009). This includes the knowledge that motor vehicle liability insurance policies in Georgia were subject to specific coverage requirements. Nothing in OCGA § 33-4-7 indicates that the

8

legislature intended the phrase "motor vehicle liability insurance policy" to have a new and different meaning in that Code section so as to include policies that did not meet the coverage requirements imposed upon all motor vehicle liability insurance policies in Georgia. Cf. *Retention Alternatives*, 285 Ga. at 440 (2) (holding that if there is nothing in amended legislation indicating that phrases used therein were to have new and different meanings, then they are construed as having the same meanings that were attached to them before amendment).

Nevertheless, Equipco argues that "including cargo insurers within the ambit of OCGA § 33-4-7 comports with the purpose of the statute," which Equipco asserts is "to impose a duty on insurers who cover property damage resulting from motor vehicle accidents to adjust the loss fairly and promptly and, where liability is reasonably clear, make a good faith effort to settle with the claimant." The legislature, however, described the statute's purpose more narrowly: "to provide for insurers' duties with respect to settlement of *motor vehicle liability policy claims*." (Emphasis supplied.) Ga. L. 2001, p. 784. Although Equipco asserts public policy and equitable arguments for why issuers of cargo liability policies should also be subjected to the duties set forth in OCGA § 33-4-7, we must construe the requirements of that Code section narrowly because it imposes a penalty. *Mills v. Allstate Ins. Co.*, 288 Ga. App.

9

257, 258 (653 SE2d 850) (2007). Furthermore, we have rejected the argument that the legislature intended under OCGA § 33-4-7 to extend to third parties the same broad rights to bring bad faith actions against insurers that are afforded insureds under OCGA § 33-4-6. *Mills*, 288 Ga. App. at 259.

Because the damage claimed by Equipco was subject to a cargo liability policy that Underwriters had issued to Steady Rockin, and not a motor vehicle liability insurance policy, OCGA § 33-4-7 provides no authority for the imposition of any penalty for Underwriters' alleged bad faith in connection with the claim. See *Mills*, 288 Ga. App. at 259. Consequently, the trial court did not err in granting summary judgment to Underwriters on Equipco's bad faith claim.

3. *Equipco's motion for partial summary judgment.*

Equipco argues that the trial court should have granted its motion for partial summary judgment in which it sought a ruling that, as a matter of law, Underwriters was prohibited from rescinding the policy. In light of our conclusion that the trial court properly granted summary judgment to Underwriters, this enumeration of error is moot.

*Judgment affirmed. Barnes, P. J., and McMillian, J., concur.*