**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 16, 2015**

# In the Court of Appeals of Georgia

A15A0917. AMICA MUTUAL INSURANCE COMPANY v. SANDERS et al.

BRANCH, Judge.

We granted the application of Amica Mutual Insurance Company ("Amica") to determine whether a trial court erred in denying Amica partial summary judgment as to Ullaine and Stephanie Sanders ("plaintiffs")' bad-faith claim arising from Amica's offer of $716.25 to settle the diminished value of their car after it was hit by Amica's insured. Amica argues that its adjuster's application of a formula established in the wake of the Georgia Supreme Court's decision in *State Farm Mut. Auto. Ins. Co. v. Mabry*, 274 Ga. 498 (556 SE2d 114) (2001), cannot, in the absence of any other evidence of bad faith, justify such a claim. We agree and therefore reverse.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We apply a de novo standard of review and view the evidence in the light most favorable to the non-movant." (Citations and punctuation omitted.) *Lawyers Title Ins. Corp. v. Griffin*, 302 Ga. App. 726, 727 (691 SE2d 633) (2010).

Although we would view the record in favor of plaintiffs as the non-movants, the relevant facts are not in dispute. In *Mabry*, supra, our Supreme Court held that insurers were contractually bound to compensate their insureds for both the cost of repair and the vehicle's lost value. The Court reasoned that because "value, not condition, is the baseline for the measure of damages in a claim under an automobile insurance policy in which the insurer undertakes to pay for the insured's loss from a covered event," an insurance contract affording the insurer an option to repair "serves only to abate, not eliminate, the insurer's liability for the difference between pre-loss value and post-loss value." 274 Ga. at 506 (4). The Court thus concluded that

> the policies issued by [the insurer] obligate it to compensate its policyholders for that loss of value, notwithstanding repairs that return the vehicle to pre-loss condition in terms of appearance and function, if the repairs do not return the vehicle to its pre-loss value; and [the insurer] is obligated to assess that element of loss along with the

2

elements of physical damage when a policyholder makes a general claim of loss.

Id. at 509 (4). Accordingly, on December 7, 2001, the Insurance Commissioner of Georgia issued a directive to all property and casualty insurers licensed in the state that they were now required to adjust claims by including "assessment and payment of diminution of value relative to physical damage." Officer of Insurance Commissioner, Directive 01-P&C-1.

The so-called "17 (c)" formula is named after paragraph 17 (c) of the second injunction issued in the class action styled *Myron G. Walker, Individually and On Behalf of All Others Similarly Situated v. American National General Insurance Company, Individually and On Behalf of All Similarly Situated Insurers in the State of Georgia* (Muscogee County Superior Court Civil Action No. SU-03-CV-2058). The 17 (c) formula specifies that the application of a so-called "damage severity modifier" was a "subjective decision, which must be made by the adjuster," and that the modifier "can be adjusted as necessary to fit the damage[]." The formula also notes that while it provided "a good figure on which to base a loss of value claim, there are many circumstances that will require additional consideration in determining the loss of value," including prior damage to and dealer ownership of the car at issue.

3

In a settlement order dated July 14, 2004, the *Walker* class action terminated those plaintiffs' claims on conditions including that the defendant insurers, including Amica, "shall continue the use of the 17 (c) formula . . . in their assessment of diminished value in physical damage losses reported by these insurer[s'] policyholders subsequent to June 30, 2003[.]" The *Walker* settlement order also provided that 17 (c), "applied appropriately and uniformly, would provide a basis for the negotiation of [a] diminished value loss," and that insurers using 17 (c) "cannot be found to have acted in bad faith by virtue of using the formula to assess diminished value claims."

On December 2, 2008, the Insurance Commissioner issued a second directive attempting "to clarify the Department's position" on diminished value claims. The Commissioner observed that the Department "ha[d] never indicated that the diminished value result obtained by a carrier's use of a particular formula or method constitutes the definitive determination of the carrier's liability to its insured," and that "[t]he nature of each claim demands that carriers must take into consideration all relevant information in the evaluation of diminished value claims including but no limited to, relevant information provided by an insured regarding diminution of value." But the Commissioner also noted that

4

defining the amount of loss associated with diminution of value is a subjective process where even experts can have a difference of opinion. For this reason, the Department has not endorsed a particular formula or method. Each claim is unique and should be evaluated as such. Every carrier has the obligation to evaluate the vehicle prior to loss and after the loss to determine the amount of diminution in value in accordance with Georgia law and applicable contractual language. *Total reliance on one particular formula or method in making that evaluation may not be appropriate given the subjective nature of the claim*.

Office of Insurance Commissioner, Directive 08-P&C-2 (December 2, 2008) (emphasis supplied). The same directive mandated that insurers should

cease using any language which implies that the Department has endorsed a particular formula or method to determine diminution of value. Specifically, any insurer disseminating information and/or appraisals to their insureds shall cease using any language which implies that the Mabry decision or any other requirement of the Department supports the proposition that the diminished value result obtained by a carrier's use of a particular formula or method constitutes the definitive determination of the carrier's liability to its insured.

Id.

These rulings and directives were in effect on March 7, 2009, when a vehicle driven by defendant Robert Miller crossed over the center line and struck plaintiffs'

5

2008 Nissan Sentra, forcing it into a third vehicle. At the time of the accident, Miller was insured by Amica, which assigned Mike Frazier, an adjuster, to perform both the repair estimate and the diminished value estimate for plaintiffs' car. Frazier first estimated the car's repair costs at $4,104.60. Using the 17 (c) formula, Frazier also estimated diminished value at zero because the car did not appear to have suffered any "structural damage." On disassembly of the car, however, Frazier saw frame damage that required what he estimated to be an additional $3,307.47 in repairs, for a total repair cost estimate of $7,412.07. In light of the discovered frame damage, but continuing to apply 17 (c), Frazier also revised his estimate of diminished value upward from zero to $716.25.

In light of Frazier's revised estimates, Amica offered plaintiffs $716.25 for the diminished value of their car, which they rejected. Plaintiffs' own appraiser later estimated the car's diminished value at approximately $3000. In February 2010, plaintiffs made a written demand on Amica for $3000 in diminished value as well as $22,000 in punitive damages and attorney fees on grounds including that Miller had been driving under the influence at the time of the accident. Amica rejected this demand, but offered $1000 to settle the claim.

In October 2013, plaintiffs filed the instant suit asserting negligence and seeking compensatory and punitive damages against Miller as well as bad faith damages and attorney fees against Amica. Amica later moved for partial summary judgment as to plaintiffs' bad faith claim on the ground that there was no evidence of bad faith in the case. The trial court denied the motion because "a jury could find that [Amica's] automatic and unwavering adherence to a certain formula in determining diminution in value is not reasonable" and that Amica's refusal to pay plaintiff's demand was in bad faith. The trial court granted Amica a certificate of immediate review as to this holding, and we granted Amica's application for interlocutory review.

Amica argues that the trial court erred when it denied Amica's motion for partial summary judgment as to plaintiffs' bad faith claim because the record contains no evidence in support of such a claim. We agree.

Generally, "[b]ad faith claims under the Georgia insurance code . . . are available only as between insureds and their insurers." (Citation and punctuation omitted.) *J. Smith Lanier & Co. v. Southeastern Forge*, 280 Ga. 508, 510 (630 SE2d 404) (2006); OCGA § 33-4-6 (a) (setting out requirements of and procedures for bad faith claim by insured against insurer). "But OCGA § 33-4-7 allows third parties to

7

bring bad faith claims directly against insurers in certain limited circumstances."

*Equipco Int'l LLC v. Certain Underwriters at Lloyds*, 320 Ga. App. 345, 347 (739 SE2d 797) (2013). Specifically, OCGA § 33-4-7 provides:

> (a) In the event of a loss because of injury to or destruction of property covered by a motor vehicle liability insurance policy, *the insurer issuing such policy has an affirmative duty to adjust that loss fairly and promptly, to make a reasonable effort to investigate and evaluate the claim, and, where liability is reasonably clear, to make a good faith effort to settle with the claimant potentially entitled to recover against the insured under such policy.* Any insurer who breaches this duty may be liable to pay the claimant, in addition to the loss, not more than 50 percent of the liability of the insured for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action.
>
> (b) *An insurer breaches the duty of subsection (a) of this Code section when, after investigation of the claim, liability has become reasonably clear and the insurer in bad faith offers less than the amount reasonably owed under all the circumstances of which the insurer is aware.*
>
> . . .
>
> (e) [A claimant's] action for bad faith shall not be abated by payment after the 60 day period *nor shall the testimony or opinion of an expert witness be the sole basis for a summary judgment or directed verdict on the issue of bad faith.*

8

(Emphasis supplied.) Because OCGA § 33-4-7 "imposes a penalty, its requirements are strictly construed." *Mills v. Allstate Ins. Co.*, 288 Ga. App. 257, 258 (653 SE2d 850) (2007) (citation omitted).

This Court has previously noted the "similarity" between OCGA §§ 33-4-6 and 33-4-7, which authorize bad faith claims and the recovery of attorney fees by insureds and third parties respectively. *King v. Atlantic Casualty Ins. Co.*, 279 Ga. App. 554, 556 (631 SE2d 786) (2006).[1] Given this similarity, "we find the case law applying OCGA § 33-4-6 to be persuasive" in the context of this OCGA § 33-4-7 claim. Id.

---

[1] OCGA § 33-4-6 (a) provides in relevant part:

*In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same* within 60 days after a demand has been made by the holder of the policy *and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder*, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer. The action for bad faith shall not be abated by payment after the 60 day period *nor shall the testimony or opinion of an expert witness be the sole basis for a summary judgment or directed verdict on the issue of bad faith*. . . .

(Emphasis supplied.)

9

For purposes of both statutes, "bad faith" is "*any frivolous and unfounded refusal in law or in fact* to pay according to the terms of the policy.'" *King*, 279 Ga. App. at 556, citing *Fortson v. Cotton States Mut. Ins. Co.*, 168 Ga. App. 155, 157 (1) (308 SE2d 382) (1983) (emphasis supplied). "'[O]rdinarily, the question of good or bad faith is for the jury, but when there is no evidence of unfounded reason for the nonpayment, or if the issue of liability is close, the court should disallow imposition of bad faith penalties.'" *King*, 279 Ga. App. at 556-557, quoting *Florida Intl. Indem. Co. v. Osgood*, 233 Ga. App. 111, 115-116 (3) (503 SE2d 371) (1998) (emphasis supplied); see also *Griffin*, supra, 302 Ga. App. at 731 (2) (b) ("Bad faith is shown by evidence that under the terms of the policy upon which the demand is made and under the facts surrounding the response to that demand, the insurer had *no good cause* for resisting and delaying payment"; bad faith penalties are not authorized "where the insurance company has *any reasonable ground to contest the claim* and where there is a disputed question of fact") (citation and punctuation omitted; emphasis supplied). An insurer thus having any reasonable factual or legal ground for contesting a claim is entitled to summary judgment under either OCGA §§ 33-4-6 or 33-4-7. *Griffin*, 302 Ga. App. at 731 (2) (b) (reversing the denial of summary judgment to insurer whose appraisers' reports gave it a "reasonable basis" for refusing insured's demand under

10

OCGA § 33-4-6); *King*, 279 Ga. App. at 557 (affirming grant of summary judgment as to a bad faith claim under OCGA § 33-4-7 to insurer who reasonably believed that another insurer was assuming responsibility for settling a claim and would then seek subrogation from first insurer).

As the *Walker* trial court noted, insurer defendants, including Amica, who use 17 (c) "cannot be found to have acted in bad faith [as to their insured's claims] by virtue of using the formula to assess diminished value claims." As we also noted in an unpublished 2012 opinion concerning an insured's bad faith claim:

> Although the Insurance Commissioner's 2008 directive indicates that, because finding the amount of diminished value is a subjective process, more is required than merely relying on any particular formula or method in making that evaluation, *no Georgia statute, insurance regulation, or common law precedent requires that an insurer use an independent appraiser or otherwise specifies the requirements of that subjective process*.

*Miles v. State Farm Fire & Casualty Co.*, 317 Ga. App. XXVI (Case No. A12A1166, decided July 27, 2012), p. 9 (emphasis supplied).

Here, undisputed evidence shows that the 17 (c) formula emphasizes the "subjective" nature of any estimation, that Amica's adjuster applied 17 (c) to estimate the lost value of plaintiffs' car, and that he did so as part of a subjective determination

11

of that value. The adjuster testified that as to his first assessment of diminished value, and with "so many variables [existing] from car to car, [but] based on this particular vehicle, and this particular damage, and this particular 17 (c)," he determined "that the loss of value . . . was zero." The adjuster also testified that after disassembly of the car, which revealed frame damage, he revised his estimate of diminished value upward from zero to $716.25. These undisputed facts, which concern the estimate process itself, show that Amica's adjuster used the 17 (c) formula as part of his subjective determination of the lost value of the car at issue.[2] Compare OCGA § 33-4-7 (e) (testimony or opinion of an expert witness shall not be "the sole basis for a summary judgment or directed verdict on the issue of bad faith"). Nor have plaintiffs explained why their third-party claim under OCGA § 33-4-7 should be treated differently from an insured's claim under OCGA § 33-4-6.

_____

[2] On motion for reconsideration, plaintiffs argue that Amica violated the Insurance Commissioner's directives by ignoring plaintiffs' appraisal of the diminished value of the car. Plaintiffs have not shown that they raised this argument in the trial court, however, with the result that we cannot consider it. See, e.g., *Williams v. Food Lion*, 213 Ga. App. 865, 867 (446 SE2d 221) (1994) (denying motion for reconsideration when appellants had failed to show that an issue was raised by the time of the original disposition of the appeal). Compare *Abellera v. Williamson*, 274 Ga. 324, 326 (2) (553 SE2d 806) (2001) (in determining whether a trial court's ruling was right for any reason, the appellate court should consider whether it was right for a ground asserted in the summary judgment motion that the trial court chose not to address in granting summary judgment).

We therefore conclude that Amica's proposed adjustment of plaintiffs' diminished value claim was reasonable and provided it with good cause as a matter of law for its refusal to pay the amount demanded by plaintiffs. See *King*, supra, 279 Ga. App. at 556-557 (1); *Griffin*, supra, 302 Ga. App. at 730-731 (2) (b) (insurer's own appraisal provided it with a "reasonable" basis upon which to deny the insurer's demand for diminished value of a parcel, precluding bad faith penalties as matter of law). It follows that the trial court erred when it denied Amica's motion for partial summary judgment as to plaintiffs' bad faith claim under OCGA § 33-4-7.

*Judgment reversed. Andrews, P. J., and Miller, J., concur.*